THE CITY OF ATCHISON V. EPHRAIM BUTCHER.

*Error from Atchison County.*

By its charter of Feb. 12th, 1858, the city of Atchison had power (sec. 30,) to take stock in the Atchison and St. Joseph Railroad Company, and with the consent of a majority of the qualified voters, to pay for it in bonds, (sec. 31).

A purchaser for stock, of such bonds, had a right to presume that all the necessary steps to the legal issuance of the bonds (as that they had been authorized by a vote under sec. 30,) had been taken.

*Held* that where the vote on the proposition to issue the bonds was had on the third day after the passage of the ordinance calling it (ordinance of March 15th, 1858,) in the absence of proof, the court will not presume the time too short, especially when the rights of the bond-holders would not be affected thereby.

The power of the corporation to dispose of the bonds when executed, was regulated by a law, of which all must take notice.

Power "to issue bonds for the stock or for the loan of money to pay for the same," (sec. 31, charter of 1858,) gave no authority to sell the bonds to raise money to pay for stock, especially below par; *semble*, that stock at par might be paid for in bonds at par.

*Held* that the Railroad Company (to whom the bonds were originally sold,) were bound to know the extent of the authority of the agent of the city in transferring the bonds; and that under section 4 of ordinance of March 29th, 1858, he had no authority to negotiate them at 70 cents per centum.

The bonds not having been made payable to bearer, order or assigns, with interest coupons attached payable to bearer, and the bond, to which was attached the coupons in suit, having been transferred by the Railroad Company to plaintiff below in payment of an antecedent debt; *Held* that he was not an innocent holder of the bond, but that he had notice upon what the interest was payable, and stood in the same relation to defendants below as the company. *Semble*, this might be different had the coupon been received detached from the bond.

The charter not authorizing the negotiation of the bonds in the manner they were negotiated, the city could not bind itself by ratification in collecting taxes and paying interest thereon, in the absence of charter authority to ratify.

*But held*, that the amendment to the charter of Feb. 27th, 1860, authorizing the city to levy taxes to pay the bonds, authorized a ratification, and the payment in the manner prescribed, of interest thereon, was such a ratification as cured the original illegality.

The City of Atchison v. Butcher.

The subjoined opinion of the court contains the substance of the agreed statement of facts, and also of the ordinances of the city bearing upon the questions decided. The action was commenced by defendant in error against plaintiff in error on eight interest coupons, due on bonds of the city, issued to pay the subscription of the city to the capital stock of the Atchison and St. Joseph Railroad Company. The plaintiff in error, (defendant below,) answered, setting up various defenses impeaching the validity of the bonds. The case was submitted to the court upon the agreed statement of facts, upon which the court rendered judgment for defendants in error, finding the facts as agreed, and conclusions of law. A motion, was made for a new trial and overruled. The case comes here for review. A copy of one of the bonds with a coupon, follows:

"UNITED STATES OF AMERICA,

"ATCHISON & ST. JOSEPH R. R. SUBSCRIPTION BOND.

"City of Atchison, (picture of locomotive, tender and three cars,) Territory of Kansas.

"No. 15.          Secured by special tax.          $1000.00

"Interest ten per cent., payable annually.

"Know all men by these presents, that the city of Atchison is indebted to the Atchison and St. Joseph Railroad Company for subscription to the capital stock of said company. And in consideration thereof the said city of Atchison does hereby agree and promise to pay to said company, at the Metropolitan Bank in the city of New York, in the state of New York, the sum of one thousand dollars on the first day of January, A. D. 1859, and also interest on the same at the rate of ten per centum per annum, payable annually on the first day of January in each and every year ensuing the date hereof, until the said principal capital sum shall be paid, upon presentation of the annexed interest warrants as they become due at the said bank. This is one of a hundred bonds of the same

character, amount and date, issued by said city of Atchison in payment of its subscription to the capital stock of said railroad company, for the redemption of which bonds ánd the interest thereon, one per centum has been set apart by ordinance as a tax to be annually assessed upon all the taxable property within the limits of said city.

"In testimony whereof, the Mayor and Board of Councilmen of the city of Atchison have caused this bond [SEAL] to be signed by the Mayor and Register of said city, and the seal of said city to be hereto attached at office in said city, this fifth day of January, A. D. 1859.

[Safe and dog.]          "S. C. POMEROY, *Mayor*.
"R. L. PEASE, *Register*."

Coupons attached, 1865:

"The City of Atchison will pay to the bearer hereof at the Metropolitan Bank in the city of New York, one hundred dollars on the 5th day of January, A. D. 1865, it being the interest to that date on its bond No. 15.

"S. C. POMEROY, *Mayor*.
"R. L. PEASE, *Register*."

The case was argued in the Supreme Court by *Leland* for plaintiff and by *Glick* for defendant in error.

*F. M. Leland*, for plaintiff in error, submitted:

1. Plaintiff maintains that said bonds and coupons constituted no debt against said city in the hands of said railroad company.

1st. Because no proposition for the subscription to stock in said railroad company was submitted to the qualified voters of said city previous to the subscription for said stock in said company, for which said bonds and coupons were given in payment in accordance with the provisions of the charter of said city. *Charter of Atchison, sec.* 30, *Act* 1858; 23 *Mo. R.*, 483.

2d.   The municipal authorities of said city, having sub-scribed for only $70,000 of said stock, had no right under the charter of said city to give their bonds in the principal sum of $100,000, with interest coupons thereon at 10 per cent. per annum, in payment thereof, and said bonds and coupons so given are *ipso facto*, null and void. *Charter of Atchison, secs.* 30, 31; 18 *How.*, 331; 21 *Id.*, 341; 1 *Hill*, 11; 2 *Kent Com.*, 344; 22 *N. Y. R.*, 258.

3d.   Said bonds and coupons so given, were void on grounds of public policy and incapable of ratification. *Story on Agency*, 240, 241; 13 *Wend. R.*, 53; 22 *N. Y. R.*, 258; 2 *Denio R.*, 110; 10 *Gray's R.*, 582.

4th.   Defendant in error having received from said com-pany the coupons in this action sued on, at the same time that he received the bonds to which they were attached, and in the same transaction and upon the same considera-tion, acquired no better title to, or higher equity in said coupons, than in the bonds themselves, and took both sub-ject to any defense which could be made to them in the hands of said railroad company.   6 *Mich. R.*, 134; 2 *Story Eq.*, *sec.* 428; 2 *Johns. Ch. R.*, 441; 7 *N. Y.*, 328.

5th.   If subsequent acts could ratify the delivery of said bonds to the railroad company, acts to that effect must have been done by all the holders of real and personal property in said city, or by a person or persons who had the right to bind them by such acts, and such acts of ratification must have been done with full knowledge of all the facts and circumstances attending the delivery of said bonds and coupons to said railroad company.   *Story on Agency*, 239; *Sec.* 1, *Charter of Atchison*; 23 *N. Y. R.*, 460.

6th.   If the taxes levied and collected by the municipal authorities of said city to pay coupons falling due in the years when said taxes were levied and voluntarily paid by the tax-payers, the payment of said taxes were mere gifts thereof, if said coupons were void, and can not so ratify and confirm the original delivery of said bonds to the company

as to preclude any legal defense to bonds or coupons subsequently falling due. 1 *O. S. R.*, 268.

*Otis & Glick,* for defendants in error, submitted :

The legislature has the constitutional right to confer, and the city of Atchison power to receive authority to issue its bonds to aid in the construction of a railroad. It is a legitimate exercise of legislative power to confer such authority.

The maxim "*stare dicises*" applies in this case, as such legislation has been sustained by the courts of sixteen of the states and also of the United States. *The Cincinnati, etc.,* v. *Coms. Clinton Co.,* 1 *O. S. R.,* 77; *City of Bridgport* v. *Housatonic R. R.,* 15 *Conn. R.,* 475 ; *The Commonwealth* v. *McWilliams,* 11 *Penn.,* 61 ; *Goodwin* v. *Crump, Leigh. R.,* 120 ; *Chesney* v. *Hoover,* 9 *B. Monroe,* 250 ; *Clark* v. *City of Rochester,* 14 *How. Prac.,* 193 ; *Sharpless* v. *Mayor of Phila.,* 21 *Penn.,* 148 ; *The. City of St. Louis* v. *Alexander, et al.,* 23 *Mo.,* 483 ; *Amer. L. Reg., Vol.* 9, 338; 21 *How.,* 539 ; 23 *Id.,* 381 ; 4 *Harrington Del. Rep.,* 479 ; 4 *Green.,* (6 *Iowa,*) 391 ; 10 *Wis.,* 136 ; 7 *Id.,* 688 ; 1 *Black.* 386 ; 24 *How.,* 435 ; 14 *O. S. R.,* 569 ; 7 *Id.,* 327 ; 12 *Id.,* 624 ; 1 *Wallace,* 175, 220, 83, 291, 384.

The question whether the subscription should be made by the corporate authorities of the city of Atchison, was submitted to the legal voters of the city. This is admitted by the agreed state of facts.

But it is objected that the time given was too short. We answer that this was a question of policy to be settled by the corporate authorities. It was entirely in their discretion, and is not subject to judicial control. The law presumes they did their duty. 21 *How.,* 539, 543 ; *Broom's Legal Maxims,* 729 ; *Edmunds* v. *Packens,* 8 *Blackf.,* 196; *Thompson* v. *Talmie,* 2 *Peters.* 157, 163 ; 5 *Ind.,* 503 ; 5 *Blackf.,* 443 ; 21 *How.,* 1 ; *Kupfer* v. *Sponhorst,* 1 *Kan. R.,* 75 ; *Gould's Pleadings, chap.* 10, *sec.* 14 ; *Bissell* v. *City of*

*Jeffersonville*, 24 *How. U. S.*, 287, 298, 299 ; *Shoemaker* v. *Goshen Township*, 14 *Ohio S. R.*, 569, 582 ; *Zabriskie* v. *Cleveland, et al., Railroad Co.*, 23 *How.*, 381, 398 ; 21 *Id.*, 559, 543 ; 1 *Wallace*, 383, 393.

The purchaser of the bonds had a right to assume the vote was taken as provided by law. *Coms. of Knox Co.* v. *Aspinwall* 21 *How.* 559, 545.

The bonds in this case notify the purchaser that the law has been complied with.

In the case last quoted, the court say that the language of the bonds imports a compliance with the law, and that the "purchaser need look no farther than the statute," and "they are not bound to do more." 8 *O. S. R.*, 401 ; 21 *How.*, 545, *and cases cited* ; *Van Hastrop* v. *Madison City*, 1 *Wallace*, 291 ; *Mercer Co.* v. *Hackett*, 1 *Id.*, 83 ; *Moran et al.* v. *Coms. Miami Co.*, 2 *Black*, 722, 731, 732 ; 14 *Ohio S. R.*, 272.

Instead of the bonds being notice to the purchaser, of a non-compliance with the law, it is the reverse. They notify him, or rather the city does it under its seal, and by its officers, that they have been regularly issued. *Cases cited supra.*

Even if the purchaser had notice of the irregularities complained of, they do not bind him. It is admitted that he had no notice of any such irregularities. *The State ex rel.* v. *Goshen Township*, 14 *O. S. R.*, 69, 86 ; *Id.*, 588, 589.

If the proposition was not submitted as it should have been, the city cannot complain. Her authorities acted under the ordinance, and the people acquiesced in their action from that day to this. No fraud is alleged or pretended. The vote authorizing the issuing of the bonds was taken on the 18th day of March, 1858. The bonds were not executed and issued till January 1st, 1859 ; no one interposing or objecting to their issuance. If the time for voting was fixed at a short day, a sufficient time existed before the issuance of the bonds to have interposed legal proceedings,

That was not done. Shylock had not yet obtained his 6,000 ducats. He watches and waits.

In the meantime, or rather six months after the subscription was voted, an election was held, new city authorities elected, and yet four months intervened and no action to prevent the issuing of the bonds, and the new dynasty go to work and issue them. *City Charter, sec. 32.*

It is too late now to say that the ordinance did not give time enough. The railroad is built to Shylock's door—he has pocketed his six thousand ducats and now wants the pound of flesh. Railroad stock raises 50 per cent. higher than city bonds, when all of a sudden the sapient magnates of the city council conceive the brilliant idea of repudiating the bonds—hold on to the railroad stock—have their city branded as a repudiator, bring it into disgrace, cover it with contempt, and destroy its credit, and they ease their consciences with the happy reflection that "base is the slave that pays." *Meyer v. City of Muscatine,* 1 *Wallace,* 384, 393.

But it is claimed that because the city subscribed for $70,000 of stock, and to discharge its subscription issued $100,000 in bonds to pay it off, therefore these bonds are void.

There is no prohibition of this kind in the charter of the city.

The whole matter, by the 31st section of the charter is left to the discretion of the city authorities. They have the right to issue the bonds for the railroad stock, or for the loan of money "to pay for the same," etc., and to issue "the bonds of said city to raise funds, in any manner they may deem proper," and "may do and perform any other act deemed advisable to carry into effect this and the preceding section."

Here we have the authority. They may have deemed it advisable to sell at less than par. That they did so is evidence that they deemed it advisable and necessary to

accomplish the object of this and the preceding section. If they could not secure the stock (or rather the real object, the building of the railroad,) by any other way than at a sale less than par, they had the authority. They had the authority to decide on the best manner to "accomplish said purpose," and they having deemed it proper and advisable to sell bonds at less than par, who shall question the legality of their acts? Having the discretion, who shall control it?

Did anybody ever hear of any city in Kansas selling its bonds at par, or any city in any new state doing so? If the city could not raise the money unless it sold its bonds at less than par, it had the right under the discretion given to the city authorities to sell for what they could get, or for an amount sufficient to accomplish the objects for which a sale was made.

It is no objection to the validity of these bonds or the coupons sued on, that they were sold at less than par. Outside of the plain and undoubted authority conferred by section 31 of the city charter, the authorities sustain the same view. *Woods* v. *Lawrence Co.* 1 *Black.*, 386, 410, 414; *Mercer Co.* v. *Hackett*, 1 *Wallace*, 83, 96.

If the statute does not make the bonds void the illegality of the sale does not discharge the city. *Beemis* v. *Becker*, 1 *Kans. R.*, 226; 21 *N. Y. R.*, 490.

The plaintiff can maintain his suit on the coupons without producing the bonds. They are independent of the bonds, payable to bearer, and the contents of the bond cannot affect the right to recover on the coupons. We have seen that no irregularity can defeat the recovery on the bonds, and "*a fortiori*," do defense can be interposed to the recovery on the coupons sued on in this case. *Coms. of Knox Co.* v. *Wallace*, 21 *How.*, 539, 546.

These bonds and coupons are now held to be negotiable, and treated the same as commercial paper. They cannot be impeached in the hands of *bona fide* holders for value.

*Moran et al.* v. *the Coms. of Miami Co.*, 2 *Black.*, 722, 731 ; *Mercer Co.* v. *Hackett*, 1 *Wallace*, 83 ; *Gelpcke* v. *City of Dubuque*, 175 ; *Meyer* v. *City of Muscatine*, 384 ; 44 *Penn. S. R.*, 63-75.

The power to subscribe carried with it the power to make and issue such bonds as were issued in this case. *Shoemaker* v. *Goshen Tp.*, 14 *O. S. R.*, 569, 582 ; 1 *Wallace*, 220 ; *Curtis* v. *The County of Butler*, 24 *How.*, 435.

The city authorities acted under the directions of the voters in issuing the bonds. The charter made the corporators the actors, and the authorities were only the instruments to execute their wishes. The vote authorized the acts—and the acts were the acts of the voters. 7 *O. S. R.*, 332 ; 8 *Id.* 402.

The bonds being void for want of power to issue them is one thing, and being irregularly issued is quite a different thing. In the latter case they are obligatory on the city.

This court in the case of Burnes *et al.* v. The City of Atchison, has decided that the power to issue existed.

If the city exercised its own power irregularly, it should not complain.

" A corporation quite as much as an individual is held to a careful adherence to truth in their dealings with mankind, and cannot by their representations or silence involve others in onerous engagements and then defeat their calculations and claim their own acts superinduced." *Zabriskie* v. *Cleveland et al., R. R. Co.*, 23 *How.*, 400.

Zabriskie's case is an elaborate review of the law on this subject, and an examination of it will show that the defenses interposed in this action are untenable.

But admitting for the sake of the argument that the city did act irregularly in the premises, has its conduct since been such as to preclude it from setting up its own misconduct as a defense to the collection of the money due on the coupons ? Is it not estopped by its acquiesence and ratification since the alleged irregularities accrued, to set it up in defense ?

The city cannot hold on to the consideration and refuse to perform its contract.    It must place the parties *statu quo*. 2 *Story Eq.*, sec. 707; 4 *Barb.*, 374; *A. A. & sec. 304.*

If principal fails to repudiate and return property, it is a ratification of the acts of the agent.    4. *Barb.*, 374.

It is agreed that the city received its stock in the railroad company, holds and votes it, etc., and has sold part of it since the commencement of this suit.    This receipt and use of the stock subscribed for, is in law a ratification of the original acts of the agents, though they had no authority originally to subscribe for the stock.    The receipt and use of the consideration of the contract is in law a ratification. *Mass.* v. *The Rosie Lead Mining Co.*, 5 *Hill.*, 137, 140 ; *Tradesman's Bank* v. *Astor*, 11 *Wend.*, 88 ; *Randall* v. *Van Vecten, et al.*, 19 *Id.*, 60, 64 ; *The Episcopal Society* v. *The Episcopal Church*, 1 *Pick.*, 371 ; *Story on Agency, secs.* 239, 244 ; *Bank of Columbia* v. *Patterson's Adm.*, 7 *Cranch*, 299, 307 ; *Angell & Ames on Corp.*, sec. 304, *7th edition.*

The city authorities and the people have had full knowledge of the acts of their former agents and have kept silent for six years.    Knowledge and silence are acts of ratification.    *Amer. Ins. Co.* v. *Oakly*, 9 *Paige*, 501 ; *Zabriskie* v. *Columbus et al.*, *R. R. Co.*, 23 *How.*, 400 ; 24 *Id.*, 299.

A ratification of part ratifies the whole.    In this case the corporate authorities have ratified the acts of their agents by using $7,000 of the bonds obtained by the contract complained of.    *Dunlap Paley on Agency*, 172, *and notes*; 10 *Paige*, 127 ; *Lawrence* v. *Taylor*, 5 *Hill.*, 107; 5 *Id.*, 137 ; *Corning et al.* v. *Southland*, 3 *Id.*, 552 ; *Story on Agency*, secs. 245, 250.

The ratification relates back and embraces the original transaction and cures all defects in the original authority to act.    8 *Wheat.*, 338, 363 ; *Story on Agency, secs*, 239, 244.

The city in this case permitted four judgments to go against it on coupons like those sued on in this case.    This

was a ratification of the acts of its agents.  *A. & A.,* sec. 304; 5 *Hill,* 137, 143.

A continued course of dealing in a particular manner is evidence to the public and third parties that a corporation has the power to do what it assumes to do, and is thereby estopped from denying the authority of the agents.  Corporations like individuals are estopped from denying the acts of their agents when in the scope of their apparent authority.  In such cases, third parties have the right to assume that the agent has authority.  *Zabriskie* v. *Columbus et al., R. R. Co.,* 23 *How.,* 381, 397; 12 *Barb.,* 80, 81; 4 *Id.,* 373; *Story* v. *Amer. L. Ins. Co.,* 11 *Paige,* 635; *Deyrell* v. *Odell,* 3 *Hill,* 215; *The Chester Glass Co.* v. *Dewey,* 16 *Mass.,* 94; *The Bank of Genesee* v. *Patchen Bank,* 13 *N. Y. R.,* 309.

In suits where the validity of these bonds was called in question by the cases mentioned in the agreed state of facts, the city for four years had itself on the record asserting and seeking to establish, and did establish the validity of these bonds and coupons, and after this solemn declaration was made matter of record, it is too late now to seek to deny what it in those cases deliberately affirmed, asserted, and admitted.  This is even stronger evidence of ratification than in the case of 5 Hill, 137.  The city in those cases by its own acts has made a case of ratification too strong for it now to impeach or deny.  The city is estopped by its own recitals on the record and in its bonds.  *Trimble* v. *The State,* 4 *Blackf.*. 435; 2 *Black R.,* 732, *and cases cited;* 1 *Wallace,* 297.

It is admitted that the city authorities after the amendment of the charter, approved Feb. 27th, 1860, assessed the tax as provided by that amendment, to pay interest on these bonds.  That amendment assumes the existence of railroad bonds.  The agreed state of facts shows there never were any other bonds than those now in controversy.  That amendment was procured by the city authorities to cure a

defect that was supposed to exist, which prevented the levying of a tax to pay the interest falling due on the bonds. That is the history of that amendment, and it is competent to look at the history of legislation to ascertain its objects.

The city levied and paid the interest as it fell due on those bonds for the years 1859, '60, '62 and '63. There was no tax levied for the year 1861, not because there was any wish at that time to repudiate, but because of the general depression in business produced by the drouth of the previous year and the breaking out of the war in 1861.

For the years indicated, a tax was regularly assessed and paid by the people of the city and collected by the proper authorities and used by them to pay off the maturing coupons.

Those acts were the highest acts of ratification known to the law, and estop the city and the people from questioning the validity of the original transaction or the authority of their agents. *The State et al.* v. *Van Horne,* 7 *O. S. R.* 327, 321; *The State ex rel.* v. *The Trustees of Union Township, et al.,* 8 *O. S. R.,* 394, 400, *et seq.* ; *The State ex rel.* v. *The Trustees of Goshen Township,* 14 *O. S. R.,* 569, 587; *Goshen Township* v. *Shoemaker,* 12 *Id.* ; *Alleghany City* v. *McCluskin,* 14 *Penn. State Pap.,* 83.

It may be claimed that as the bonds are not negotiable that will affect the right of the plaintiff below to recover. The coupons are negotiable and pass by delivery, and we have seen that even notice of the irregularities cannot affect *bona fide* holders of bonds and coupons. In this case that question cannot arise, as this suit is only on coupons. But if it did, the repeated acts of ratification of the bonds in the hands of innocent holders for value, estop the city from raising that question, were it even available. *The State ex rel.* v. *Goshen Township,* 14 *O. S. R.,* 588; 14 *Id.,* 526; 21 *How.,* 544, 545 ; 120, *O. S. R.,* 624; *White* v. *The Vermont, et al., R. R. Co.,* 21 *How.,* 575.

If notice of these irregularities cannot affect the right to

recover, the want of negotiability cannot affect them after the acts of ratification that are shown to exist, at this late day. The bonds need not be produced to maintain this suit. 21 *How.*, 546.

It is claimed that interest cannot be collected on these coupons. If they are not paid at maturity they draw interest the same as any other note or due-bill. The statute provides that interest shall be allowed on any instrument of the debtor in writing, after maturity. These coupons are within the law. Some of them fell due when the legal rate of interest was ten per cent, and others at seven. *Comp. Law*, 603; *Laws of* 1863, 63; *Forbes & Adams* v. *Canfield*, 3 *O. R.*, 17; *Wilkinson* v. *Root*, 4 *Id.*, 373; *Van Rensalear*, etc. v. *Jewett*, 2 *N. Y.*, 135; 44 *Penn. St. R.*, 63.

*By the Court*, CROZIER, C. J.

The city of Atchison was created a corporation under the act of the territorial legislature approved Feb. 12, 1858. That act contained among others, the following provisions:

"Section 30: Power to subscribe for stock in railroad companies—proviso, question to be submitted to the people. That the city of Atchison as hereby incorporated shall have power to subscribe for stock in any railroad company proposing to build a railroad leading to or from said city of Atchison in Kansas territory or opposite to said city on the bank of the Missouri river in the state of Missouri, provided that the stock subscribed for and actually paid in, shall not at any time exceed two hundred thousand dollars; and provided also that said city shall not subscribe for more than one hundred thousand dollars of such (stock) in any one year; provided also that said city shall not subscribe for any such stock at any time until a proposition for thus subscribing shall have been submitted to a vote of the qualified voters in said city, and if a majority of the votes polled approve of the proposition, the stock may be subscribed, otherwise it shall not be."

" Section 31. Bonds of the city may be issued for railroad stock ; the city may appoint agents, borrow money, etc. That in order to carry out the provisions of the preceding section the bonds of said city may be issued for said railroad stock or for the loan of money to pay for the same, bearing interest at the rate of ten per cent. per annum ; and the authorities of said city may by ordinance or otherwise provide for subscribing for said railroad stock, or issuing the bonds of the city to raise said funds in any manner they may deem proper,. and in order to the accomplishing said purposes may appoint agents or do and perform any other act deemed advisable to carry into effect this and the preceding section."

On the 27th day of February 1860, the charter was amended by the enactment of the following :

" Section 1.   To provide for a sinking fund ; to levy a special tax for 1860 not exceeding two per cent—proviso : The mayor and council of the city of Atchison for the purpose of paying the interest on and providing a sinking fund for the ¡payment of the principal of all bonds which have been or may hereafter be issued by said city in payment of the subscriptions of stock in any railroad company, shall have power by ordinance to levy a tax in addition to the taxes for the general purposes of said city on all real and personal property in said city subject to taxation for general purposes ; provided however, that such special tax shall not for the year 1860 exceed two per centum of the assessed value of the property, and for every year thereafter shall not exceed one per centum of the assessed value ; and provided further, that such special tax for the year 1860 on such property as was not assessed for taxation for the year 1859 exceed the sum of one per centum of its assessed value, and the mayor and council may refund 'to all who may have paid a tax under an ordinance of said city for railroad purposes during the year 1859 the amount so paid by them."

March 15th 1858, an ordinance was passed by the city council requiring an election to be held on the 18th day of that month for the purpose of submitting to the qualified voters of the city a proposition to take stock in a railroad leading from St. Joseph to a point on the Missouri river, opposite Atchison, to the amount of one hundred thousand dollars, and to issue the bonds of the city therefor. An election was so held, at which a majority of the votes given was in favor of the proposition.

On the 29th of the same month an ordinance was passed appointing Samuel C. Pomeroy the agent of the city to subscribe for it for stock in such railroad to any amount not exceeding one hundred thousand dollars, and also provided the manner in which the bonds of the city should be issued, when payable, the rate of interest they should bear, &c. One section of this ordinance is as follows:

" Section 4. The said agent shall have power to sell all bonds at not less than seventy-five per cent. of the amount so mortgaged or pledged at a rate of interest of not more than ten per cent. per annum."

The agent so appointed subscribed for stock in the Atchison and St. Joseph Railroad Company to the amount of seventy thousand dollars, to be paid for in the bonds of the city at seventy cents on the dollar.

In August 1858 an ordinance was passed authorizing the mayor to execute to the railroad company bonds to the amount of fifty thousand dollars, and in January of the next year the amount was increased to one hundred thousand dollars.

The form of the bonds issued under this authority was prescribed by ordinance, and they were made payable to the " Atchison & St. Joseph Railroad Company," not to " bearer " or " order." The interest coupons attached to them were payable to " bearer." During the year 1859 bonds to the amount of one hundred thousand dollars were delivered to the railroad company and stock to the amount of

seventy thousand dollars was issued to the city, since which time the city has voted in the company upon the stock, and both before and subsequent to the enactment of the amendment to the charter on the 27th of Feb. 1860, has levied and collected a tax to pay the interest on the bonds, and in some instances has paid the interest to the holders of coupons.

Some of these bonds were assigned by the railroad company to the defendant in error, the unmatured coupon being attached thereto. The action in the court below was instituted upon these coupons and was submitted upon an agreed statement of facts substantially above set forth. The court found the facts as agreed upon and gave judgment for the plaintiff below for the amount of the coupons which were due, and interest from the time they were payable. For the purpose of having this judgment reviewed the case is brought here.

At the time of issuing these bonds the city of Atchison was a municipal corporation, and as such could exercise such powers as were conferred upon it by the act of the legislature which created it, and none other. It took no powers by implication. It had power to take stock in the proposed railroad company and pay for it in its bonds if a majority of the qualified voters should consent thereto, and when the bonds should be executed and offered either in payment of the stock or as security for money borrowed with which to pay for it, the legal presumption so far as the creditor or the company would be concerned, would be that all the necessary steps to the legal issuance of the bonds had been taken. So in this instance; the railroad company when these bonds were offered in payment of their stock were not bound to inquire whether there had been an election at which the proposition to take the stock had been submitted to the qualified voters and supported by a majority of them. This the company had a right to presume. But in fact an election had been held and a majority of the

votes was in favor of the proposition. The only objection to the election that counsel insisted on was, that it was held the third day after the ordinance calling it was passed. It is true there was but a short time, but it may have been amply sufficient in this case. Every qualified voter in the city may have voted for aught that appears in the record to the contrary; and if such was the fact the objection as to time would have but little force. Certainly in the absence of all proof the court ought not to presume that the time was too short; and especially so when such presumption could not in any way affect the rights of the bond holder.

Further than above indicated, however, the presumption could not go. The power of the corporation to dispose of the bonds when executed was regulated by a law which all parties were presumed to know. The act of the legislature authorizing the subscription and the issuing of the bonds was a public law, of which all must take notice. It authorized the city "to issue bonds for the stock or for money to pay for the same, bearing interest at the rate of ten per cent. per annum." It was not authorized to sell bonds and thus raise money to pay for the stock. If that course were adopted and the bonds sold below par, the rate of interest would be increased above what the law authorized. It certainly was not contemplated that the value of the stock would be above par, nor could it have been expected that the bonds would have been worth less than the stock. If the bonds could lawfully be bartered at a discount, then if the money was borrowed upon them the stock might have been bought at a premium, which certainly was not contemplated. The proper construction of the provision is that this stock might be paid for at par in bonds at par or paid for in money borrowed at ten per cent. per annum. If the city authorities exceeded their power in this respect their act was void. They had no power to barter the bonds at seventy per centum for stock at par, and there could be no presumption in favor of such exercise of power.

The City of Atchison v. Butcher.

Added to this the city gave its agent no power to dispose of them for less than seventy-five per centum of their par value. He went entirely beyond his authority, and the railroad company were as much bound to know the extent of this power when treating with him as if he had been the agent of a private individual. The transaction as it then stood was void, and the railroad company could not have recovered upon the bonds either for principal or interest.

But it is claimed that the plaintiff below was a *bona fide* holder of the coupons sued on, without notice of the original transaction, and hence the fact of the illegality of the barter is no defense as against him. Such would undoubtedly be the case if the bonds were negotiable or had he received the coupons disconnected from the bonds. It will be observed that the bonds were not made payable to bearer, order or assigns of the railroad company, but to the company alone, while the coupons were payable to bearer. The agreed statement shows that the bonds to which the coupons in suit were attached, were transferred to the plaintiff below in payment of a debt by the railroad company. He had ample notice upon what the interest was payable and could not in the nature of things be an innocent holder. He occupied the same position with reference to the coupons that a man would be in who has bought a promissory note payable to bearer after he was notified of a defense by the maker. In no sense was he an innocent holder. So that under the circumstances he occupied precisely the same position with reference to the bonds and coupons that the company did, and if they could not maintain a suit thereon, he could not.

But it is claimed that although the city authorities may have exceeded their power in the issuing of the bonds, yet their act has been since ratified by the city by the collection of taxes and the payment of interest. It must be apparent that if the city had no power to make the original transaction it could not without additional legislation ratify

it. If the act of incorporation had not been changed no number of payments of interest could have amounted to a ratification. There was no power in the city to ratify. It is a creature of law and can do nothing except where the power is specifically conferred. It had no power to dispose of the funds as it originally did, and never could have cured the illegality without additional power. The additional power, however, was in this instance conferred. The amendment to the charter hereinbefore quoted, conferred the power of ratification. The city is directly authorized to levy taxes to pay the interest and principal of these bonds. Such taxes have for several years since that time been levied and paid, and the proceeds applied in payment of the interest. This is such a ratification as cures the original illegality.

Having constantly availed themselves of the privileges the possession of the stock conferred, and having been endowed with ample authority to that end, the people with commendable alacrity took upon themselves the burden of paying for it, long after the benefits of the expenditure had been realized. It is very evident from the facts that no disposition to repudiate these bonds can be attributed to the people of that city generally. The necessity for the suit in the court below must have grown out of the nonaction, either accidental or intentional, of a very few individuals.

The conclusions of the court are, that the city of Atchison had no power prior to February 1860 to issue bonds for railroad purposes and barter them for stock at seventy per centum—that the same defense might have been interposed to a recovery on the coupons in the hands of the plaintiff, that might have been sustained against the railroad company; that the act of 1860 conferred upon the city power to ratify its former illegal act, and that it did ratify it.

The judgment will be affirmed.

All the justices concurring.