## IN RE APPEAL OF W. D. MCLAIN.

**MUNICIPAL CORPORATIONS:** Record Establishing District is a
1  Finality—Assessing Excess Acreage.  A duly entered record of
the lands included within a drainage or sewer district is the
only competent evidence of the identity of the district.  In assessing benefits, the council may not multiply the maximum
benefits per acre by a multiplier which represents the number
of acres which the council *intended and supposed* it had included within the district, but had not.

**MUNICIPAL CORPORATIONS:** Consent to Irregularities in Estab-
lishing Sewer District. Property owners may consent to *irregu-
larities* in the exercise by the city council of its jurisdiction
to establish drainage or sewer district, but failure to include
certain lands in the record establishing the district is not a
mere irregularity, but a total *failure of jurisdiction* over such
omitted lands.

**MUNICIPAL CORPORATIONS:** Objection of Excessiveness—Non-
necessity to Amplify on Appeal. The plea before the city coun-
cil of excessiveness in assessment will enable the property
owner, on appeal from an adverse decision, to show, without
amendment to his objections, that his assessment was arrived
at by multiplying the maximum benefits per acre by a multi-
plier which represents more acreage of his land than was in-
cluded within the district, especially when the assessment did
not reveal such unauthorized computation.

**MUNICIPAL CORPORATIONS:** Estoppel to Object to Excessive
Assessment. Consent by a property owner that the city may
build a sewer across his land, and an agreement by him to
pay his "just and proportionate" part of the cost, do not work
an estoppel to contest the amount assessed against him.

**MUNICIPAL CORPORATIONS:** Reduction in Assessment Because
of Excessive Cost. It may not be contended, on appeal from
an alleged excessive assessment, that the improvement might
have been built more cheaply, especially when it was built
just as the objector had insisted.

*Appeal from Story District Court.*—R. M. WRIGHT, Judge.

MARCH 16, 1920.

REHEARING DENIED JULY 6, 1920.

IN the district court, this was an appeal by McLain from
an order of the city council of Ames, assessing drainage
benefits against a portion of his farm. The district court
awarded him partial relief. From such order of the district
court, the city council has appealed. In the discussion of
the case, we shall refer to McLain as the plaintiff, and to
the city council as the defendant.—*Modified and affirmed.*

*John Y. Luke*, for appellant.

*Lee, Garfield & Coyle*, for appellee.

EVANS, J.—I. The drainage improvement under consideration herein was a storm sewer. This storm sewer carried the surface water from certain highlands within the city corporation, including Graeber's Addition thereto, down to Squaw Creek, where the outlet of the sewer was constructed. From its outlet, the sewer was constructed of drain tile across the Squaw Creek bottoms, and extended up to a connection with the storm sewers and catch basin formerly constructed in Graeber's Addition. The bottom land across which it was constructed was that of plaintiff, and was a part of his farm of 231 acres. About 160 acres of this farm are included within the city corporation. The farm abuts on the south side of the Lincoln Highway, and it lies between the city proper of Ames and the Agricultural College. Contiguous to it on the west is Graeber's Addition, comprising about 60 acres of ground. This addition was laid out with a view of furnishing a residence location convenient to the college. The north part of plaintiff's farm is located in the north one half of the northwest quarter of a certain Section 10. The main sewer crosses it in an east and west direction. A branch thereof runs northwesterly and southeasterly. The location of the sewer is within the north 57 acres of plaintiff's farm. For the purpose of constructing the improvement, the city council established a drainage district, pursuant to the statute. The boundaries of the district were made to include the north 57 acres *of the northwest-quarter of said Section 10,* and all of Graeber's Addition, comprising about 60 acres. This was the total area of the drainage district. The cost of the improvement was a little less than $8,000. The benefits assessed against the lands of plaintiff were $2,011.

1. **MUNICIPAL CORPORATIONS: record establishing district is a finality: assessing excess acreage.**

Originally, this apportionment was entered in lump against the plaintiff's land, without specifying any description. Later, and in response to plaintiff's objections filed, the apportionment was divided, so that $1,299 thereof was entered against the northwest quarter of the northwest quarter of Section 10, except 5 acres, and the balance thereof was entered against the northeast quarter of the northwest quarter. The plaintiff filed extended and specific objections to the assessment, all of which, however, were reducible to the ultimate objection that the assessment against him was excessive.

The particular fact in the case which has given the litigants their greatest trouble, and to which their briefs have been very largely directed, is that, in fixing the amount of the assessment against plaintiff's lands, account was taken, as alleged, of benefit accrued to land *outside* of the district. It was deemed by the city council that the plaintiff received benefit to the extent of $37.10 an acre on the north 57 acres of his farm, and the computation was made, as alleged, upon that basis. Only 39 acres, however, of the plaintiff's farm were included within the district as established. That is to say, the district as established was made to include the north 57 acres of the northwest quarter of Section 10. Of this area so included, Coy owned 5 acres, and Roberts owned approximately 13 acres. The plaintiff owned the remaining 39 acres, and this was the north 39 acres of his farm. The sewer as constructed cut plaintiff's farm on a line outside of and further south than the north 39 acres, but within the north 57 acres. In explanation of this discrepancy, the defendant contends that there was a mistake in the description of plaintiff's land, made in the resolution of necessity, and that such mistake was carried through the successive proceedings of establishment; that the real intent of the city council was to include within the drainage district the north 57 acres of plaintiff's farm, and that all of its proceedings were had on that theory, and that the plaintiff knew it and acquiesced in it; that the plaintiff waived the irregularity, by failing to object thereto; and further, that

the plaintiff is estopped from raising such question, because of a certain paper signed by him, known in the record as Exhibit A, whereby he agreed to the construction of the sewer across his land, and whereby he agreed to pay his proportionate share of the cost thereof.

For the plaintiff, it is contended that this discrepancy was not discovered by him until the case came into the district court; that he did not know, nor did the record in any manner indicate, that the sum total charged against him was arrived at by considering benefits to other acres of his land than those included within the district. In the district court, the plaintiff filed amendment to his petition, which was, in form, an amendment to his objections, whereby he challenged the jurisdiction of the city council to take account of benefits to acres situated outside the · boundaries of the district. A motion by defendant to strike this amendment, on the ground that the objection therein made was not made before the city council, was overruled; and this is one of the grounds of reversal laid by defendant.

Counsel for both sides have filed very extensive and very able briefs on the question of jurisdiction of the city council, and whether the nature of the jurisdiction involved was such that it could not be conferred by consent of the adverse party, and furthermore, whether the irregularities of the jurisdictional procedure were such as could or could not be waived. We shall not follow counsel far into that field.

It is undoubtedly true that there is a jurisdiction which can be conferred by consent, and a jurisdiction which cannot. It is sometimes said that jurisdiction of *subject-matter* cannot be conferred by consent. Such a proposition is simple enough. It is also sufficiently accurate, if the meaning of its terms be thoughtfully guarded. Jurisdiction of subject-matter is easily distinguished from a personal jurisdiction. It should be further noted that jurisdiction of subject-matter is not the equivalent of a jurisdiction *in rem*. Jurisdiction *in rem* may

2. MUNICIPAL CORPORATIONS : consent to irregularities in establishing sewer district.

be conferred by consent as readily as personal jurisdiction. "Subject-matter" over which jurisdiction cannot be conferred by consent has reference, not to the *res* or property involved in the litigation, but to the purported *subject* of the litigation. For instance, if a justice of the peace were to render a decree of divorce or a decree of foreclosure, it is not in the power of the litigants to confer upon him, or to enable him to acquire, jurisdiction to that end. The realm of his jurisdiction does not extend to those *subjects*. Jurisdiction of subject-matter has reference, not to jurisdiction in the particular case, but to jurisdiction in that *class* of cases. It has reference to the *nature* of the action and of the relief sought. The doctrine that it cannot be conferred by consent has its usual application to the acts of courts and tribunals of limited jurisdiction. Some states have criminal courts which have no civil jurisdiction; and some have civil courts which have no criminal jurisdiction. Other limitations of jurisdiction may be imposed. There is an appellate jurisdiction which is a class of its own, and which is limited, in the sense that it is contingent or conditional upon timely appeal by statutory method and within statutory time. Failure of such condition terminates its potential power to acquire thereafter any jurisdiction to review the judgment below. Consent will not confer it, nor waiver revive it. To put it in another way, jurisdiction of subject-matter is conferred by operation of law, and not by act of the parties or by procedure of the court. It cannot be ousted by act of the parties, if it exists, nor conferred by such acts, if it does not exist. Its existence antedates the particular litigation, and is not conferred by the litigation or by its procedure.

We may say, briefly and broadly, that it is ordinarily true that, where a tribunal can, by proper procedure, acquire full jurisdiction of the matter in litigation, irregularities in such jurisdictional procedure may be waived by the party in interest adversely affected, provided such waiver or consent is had before judgment. And this is so both as to jurisdiction *in personam* and jurisdiction *in rem*.

As applied to this case, the city council did have jurisdiction of this *class* of cases. It did have power' to establish a district by proper procedure, and to assess the benefits therefor. This power existed by operation of the statute. It was independent of this particular litigation, and was neither greater nor less because of it. But it was still incumbent upon the city council, in order to exercise this jurisdiction in the particular case, to acquire jurisdiction *in personam* and *in rem* by means of appropriate procedure. If the procedure fails, the jurisdiction *in personam* or *in rem* fails, and the particular litigation falls.

Whatever the lack of jurisdiction, therefore, in this case, it was not a want of jurisdiction of subject-matter. It was also competent for plaintiff to waive and consent, if waive and consent he did.

II. We reach the conclusion, also, that the question of jurisdiction is not a controlling question in the case. The trial court sustained the jurisdiction of the defendant council to assess the benefits to the 39 acres included within the district. From this finding, the plaintiff has not appealed. The defendant council does not challenge the jurisdiction. The real question in the case is not whether the city council had jurisdiction to assess **lands outside of the drainage** district, but whether its assessment made on the land within the district is excessive. It does not affirmatively appear upon the record of the city council that benefits to other lands were included within the assessment. It is proper that we look into the reasons and data upon which the council fixed upon the sum total of benefits to be assessed against the plaintiff. If it estimated benefits upon a false or illegal basis, such basis cannot be sustained; and this is so whether it acted with jurisdiction or without it. The first question, then, is, What land was, in fact, included within the district established? All the proceedings of the city council in the matter of establishment contained the specific description which we have already set forth. There is no ambiguity in it. If the intent of the city council was otherwise, such intent was never expressed upon its records. If

the boundaries of the district had been indicated upon a plat on file, in a manner different from that set forth in the specific description contained in the resolution of necessity and in the notice, there might be some ground for treating the plat as controlling; but there was nothing of that kind. The plat which was later filed did not indicate the boundaries of the district, nor purport to do so. It did show Graeber's Addition and the location of plaintiff's farm and of the sewer and its branches. If the council was mistaken in its description of the land to be included, that might be ground for undoing its proceedings and correcting its mistake; but nothing of that kind was done. The mere intent of the city council was ineffective, either to establish the district or to defeat its establishment. The district could be established only by proceedings entered upon its records. Until it was established upon the records, it was not established at all. So far, therefore, as the proceedings of the city council in the matter of such establishment are concerned, they must be deemed a verity as they appear upon the records.

3. MUNICIPAL CORPORATIONS: objection of excessiveness: non-necessity to amplify on appeal.

It is urged by the defendant that the objection made by the plaintiff in his amendment to petition had been waived by his failure to include the same in his objections before the city council. Let us suppose that the amendment to the petition had not been filed at all. Indeed, for the purpose of this discussion, we shall so treat it. The objections filed before the city council did challenge the assessment as excessive and disproportionate. That presents the one ultimate question before us. If the amount assessed against the plaintiff's land is not greater than the just proportion of benefit received by his 39 acres within the district, then it must be sustained. And this is so, even though we should find that the city council arrived at this sum total upon a false basis, and upon a mistaken computation. We look, therefore, to the evidence. The only evidence in support of the assessment is that the benefits accrued to

this land were equal to $37.10 per acre. We cannot, there-fore, find the benefits to be greater than warranted by such evidence. The maximum of benefits, therefore, must be fixed at the product of $37.10 multiplied by 39, which equals $1,446.90. The larger sum, therefore, found by the city council must be deemed erroneous. That it was the result of a mistake of some kind is evident. Whether the council or its engineer mistakenly supposed that a greater acreage was included in the district, or whether they forgot the multiplication table, or made any other mistake in their computation. is only incidental to the inquiry, and not con-trolling.

On the question of waiver in the form of objections, it is to be noted further that there was nothing in the form of the entry of the assessment to indicate that it purported to include benefits accrued to lands outside of the district. And this was so, even after the lump assessment was divided and apportioned to the lands of plaintiff in each of the two separate 40-acre subdivisions. The method of making this assessment of record was to enter the figures upon the plat and schedule prepared by the engineer and filed by the commission, as follows:

"NW ¼ of the NW ¼ Sec. 10–83–24 except 5 acres in the NW corner, $1298.50."

"W 22 acres NE ¼ NW ¼ Sec. 10–83–24, $816.20."

Appellant contends that such entries showed the con-sideration of benefits to the entire 35 acres owned by plain-tiff in the NW ¼ NW ¼, and to the entire 22 acres owned by him in the NE ¼ NW ¼. This, however, is an erroneous assumption. The plaintiff did own 35 acres in the NW ¼ NW ¼. If only one acre thereof had been benefited by the improvement, the amount assessed for such benefit would be assessed, under our statute, against all the land owned by the plaintiff in that 40-acre subdivision. The same would be true as to the land owned in the other 40. The assessment, therefore, was appropriately made, in each case, upon the 40-acre subdivision, so far as it was owned by

the plaintiff, even though the benefits considered were confined to a smaller acreage.

If, therefore, it had been otherwise incumbent upon the plaintiff to be more specific in his objections, and to have challenged the particular basis of computation adopted by the city council in its assessment, there was nothing in the form of the assessment to invite such specification.

In a word, the amount fixed by the city council is reduced, not because it included benefit to outside land, but because the evidence does not sustain it as to inside land.

4. MUNICIPAL CORPORATIONS: estoppel to object to excessive assessment.

III. Was the plaintiff estopped to challenge this assessment by virtue of the certain instrument, Exhibit A, already referred to? It appears that certain negotiations were had between plaintiff and the city council, in advance of the proceedings now under consideration, and looking to the construction of the said improvement. Pursuant thereto, the plaintiff signed the following instrument:

"Ames, Iowa, September 1, 1914.

"We, the undersigned property owners, do hereby agree with the city of Ames, Iowa, that the said city of Ames, Iowa, may construct a sanitary sewer and storm sewer in, upon, and across our property, in accordance with the plans and specifications to be drawn by the city engineer of said city. That the sewers shall be constructed of 18-inch pipe commencing at the intersection of Lincoln Way and Beech Avenue, and the intersection of Greeley Street and Beech Avenue, and converging at a point east on the farm land of Wm. McLain, and from that point east to be constructed of 24-inch pipe to place of outlet. That we waive all damages in the construction of the said sewers across our premises. That we also waive the passing of a resolution of necessity and the publication of notice thereof; and we hereby consent that without such proceedings the said city of Ames may construct and contract for the main outlet for storm and for sanitary sewers for Subdistrict No. 2 of

District No. 3, College Heights Addition, and other lands Ames, Iowa.

"And we hereby agree to pay our just and proportionate cost and benefit in the said improvement.

"[Signed]    W. D. McLain."

By the foregoing instrument, the city council obtained plaintiff's consent to lay the sewers across his land without claim from him for damages. He also bound himself therein to pay his proportionate amount of costs. It is, perhaps, true that, if this instrument had fixed the specific amount that plaintiff was to pay, he would be bound thereby, regardless of irregularities in the proceedings establishing the district. Such is not the situation. The amount which he should pay as his proportionate cost was left for future determination. The proportionate amount which plaintiff should pay could not be determined without determining also the proportionate, amount which other beneficiaries should pay. These other property owners, many of them at least, had not bound themselves by any instrument. An establishment of a district was, therefore, necessary, before the proportionate amount which even the plaintiff should pay could be estimated. This was the course followed by the defendant.

While this instrument may be deemed effective to protect the city in the location of its sewer across the plaintiff's land, regardless of the boundaries of the district, we can see nothing in it which can be deemed to operate as an estoppel upon the plaintiff to question the *amount* fixed by the council as his "just and proportionate" share of the cost and benefit. But it is argued that it does estop him from contesting the amount of the benefits accrued to his land outside of the district. The argument is that he would have been liable under his contract for his share of the benefits accrued to his land, even if no district at all had been established. Assuming this contention to be theoretically correct, then the city council could not have been the tribunal which could adjudge such proportionate cost and benefit. Construing the contract as the defendant does, and

assuming that it could be enforced according to its terms, the city council would be one of the parties to it. To enforce it would require resort to a court of equity. The only way in which the city council could become a tribunal at all for such purpose was by the establishment of the drainage district. To sustain defendant's contention at this point would be to say that the city council could assess the plaintiff for benefits accrued to each of the 231 acres of his farm, regardless of the boundaries of the district. But the defendant itself would be appalled by the magnitude of such a claim, and it stops far short of it. It only claims for benefits to 57 acres; and it puts such claim upon the ground that such 57 acres *were included* within the district, within the real intent of the city council. So the logical keystone of defendant's argument is that, because of the real intent of the city council, which was frustrated only by a mere mistake, the 57 acres *were* included within the district. This only brings us back to where we started. Can the boundaries of the district, as established upon the record, be contradicted by the intention of the city council, it being shown that the failure to express such intent was the result of a mistake? In other words, is the discovery of the mistake a sufficient correction of it to eliminate it? The record remains. Until it is in some manner corrected or changed by appropriate procedure, it is the only evidence of the establishment and of the identity of the district which can be considered. We hold, therefore, that the instrument relied on is not effective as an estoppel upon the plaintiff to contest the amount assessed against him as his just and proportionate share.

IV. The trial court reduced the sum total of plaintiff's assessment to an amount less than $37.10 an acre on 39 acres. The amount of such reduction was $134. The particular ground or basis for this reduction is not made to appear in the record. Our examination of the record does not satisfy us that such reduction should be made. The plaintiff introduced testi-

5. MUNICIPAL CORPORATIONS: reduction in assessment because of excessive cost.

mony tending to show that he could have drained his land at a much smaller expense; that a 15-inch tile would have been effective for that purpose; that the extraordinary size of the sewer tile used, being 24 inches in the main and 18 inches in the branches, increased the cost of the improvement enormously, without any corresponding benefit to the plaintiff; that the actual benefit to the plaintiff was much less than $37 an acre. On the other hand, it appears that the size of the drain tile to be used was insisted upon by the plaintiff, as a condition to his signing Exhibit A. Up to that time, the council had contemplated only a 20-inch main and 15-inch branches. The land of plaintiff was servient to the land comprising Graeber's Addition. This addition was upon high ground, and it cast its water readily upon the surface of the plaintiff's lower lands. The construction of the storm sewer through the plaintiff's land was not essential to the ready discharge of water from the Graeber Addition. The water being cast upon the plaintiff's land was held in the depressions covering much of its surface. Its highest ground was next to the banks of the stream, the precipitation of the silt, in times of overflow, having built up the surface next to the stream. It required a cut of 8 or 10 feet through this ground next to the stream. The water which was cast from the hills upon the plaintiff's ground, therefore, accumulated further back, without any outlet to the stream. Plaintiff's purpose in insisting upon a large sewer was to hasten the discharge of the water from the upper ground, in order that the drain might be relieved of its pressure, and thereby become efficient as a drain to his land. It is true that, when Squaw Creek overflows its banks, the sewer cannot, for the time being, drain the plaintiff's land. But such overflows are exceptional, rather than usual, and are brief in their continuity. The testimony for plaintiff to the effect that a 15-inch tile would have drained his land, is predicated upon a hypothesis of one-half inch of rain in 24 hours. While the plaintiff may be satisfied with such a hypothesis now, he would not entertain it when he insisted

upon a 24-inch drain. Assuming that a 15-inch drain was sufficient to carry off one-half inch of rainfall in 24 hours, the query remains, How large a drain would be necessary to carry off 3 inches of rain in 24 hours? Could the plaintiff deem his land well drained if he had to wait 6 days for a 15-inch tile to carry off 3 inches of rainfall? We do not hold that plaintiff's former insistence works an estoppel upon him now; but it is an important circumstance that bears heavily upon the weight of his present expression of opinion. His former insistence must be deemed to reflect his true opinion at that time. Inasmuch as he was undertaking, at that time, to pay his proportionate share, he had no interest in insisting upon a larger drain than seemed to him really necessary. That was his candid opinion then. He does have an interest now in belittling the importance to him of an enlarged drain. We think it clear that his former opinion is more trustworthy than his present one. Nor do we find that the benefits assessed to the lower ground were disproportionate in amount. The area of 57 acres of low ground was substantially equal to the area of Graeber's Addition, which was on high ground. Substantially all the drainage benefits went to the low ground. One fourth of the cost was imposed upon the 57 acres, and three fourths thereof upon the high ground of the addition. We see no fair ground for saying that this imposed upon the low ground an excessive share.

It is true that the area of the district was very small, and that the cost of the drain was quite appalling. It may be true that it was a greater cost than should have been imposed upon so small an area; but this was a question set for consideration before the establishment of the district. Plaintiff made no objection to it then, though he had full notice of what was proposed. Not only did he fail to object, but he had already signed the instrument Exhibit A. On that question, therefore, plaintiff had his day, and was content. It is not involved in this appeal. For the purpose of this appeal, it must be assumed that the benefits to the district were equal to the cost. The problem pre-

sented on this appeal is to apportion such cost justly, in proportion to benefits.

We do not overlook the point made in behalf of plaintiff concerning Exhibit A, that its conditions were not observed by the city, and, therefore, that it should not weigh against the plaintiff. The point made is that, under Exhibit A, the sewer was to *commence* at the intersections of Lincoln Way and Beech Avenue and Greeley Street; whereas it was constructed to commence at points much higher up. We do not so read the instrument. The particular sentence referred to is the following:

"That the sewers shall be constructed of 18-inch pipe commencing at the intersection of Lincoln Way and Beech Avenue and the intersection of Greeley Street and Beech Avenue, and converging at a point east on the farm land of Wm. McLain, and from that point east to be constructed of 24-inch pipe to place of outlet."

The mandate of this sentence is that certain sections of the sewer should be "constructed of 18-inch pipe," and that another section thereof should be "constructed of 24-inch pipe." The participial phrase, "commencing at the intersection of Lincoln Way," etc., is descriptive of the section which should be constructed of 18-inch pipe. There is no claim that the sections or branches were not constructed of 18-inch pipe from the respective intersections of Lincoln Way and Greeley Street with Beech Avenue to the converging point; nor is there any claim that the section from the converging point to the outlet was not constructed of 24-inch pipe. If the branches were, in fact, extended farther up than the particular intersections referred to, there is nothing in the instrument to forbid it.

Upon the whole case, we reach the conclusion that the assessment of the plaintiff must be fixed by such sum in dollars as equals the product of 39 multiplied by $37.10. This sum should be apportioned on the land owned by plaintiff, as between the two 40-acre subdivisions. To this extent, the judgment of the district court will be modified, and in all other respects affirmed.—*Modified and affirmed.*

WEAVER, C. J., SALINGER and STEVENS, JJ., concur.