[Civ. No. 15735.   First Dist., Div. One.   Apr. 28, 1954.]

THE PEOPLE ex rel. JUNE KLEVESAHL, Appellant, v. CITY OF SAN BRUNO et al., Respondents.

JUNE KLEVESAHL et al., Appellants, v. CITY OF SAN BRUNO et al., Respondents.

Edmund G. Brown, Attorney General, R. Lee Chamberlain and Charles A. Barrett, Deputy Attorneys General, and Kirkbride, Wilson, Harzfeld & Wallace for Appellants.

R. A. Rapsey, City Attorney, and Paul De Mare, for Respondents.

PETERS, P. J.—San Bruno purportedly annexed an area known as Lomita Park Territory. Two proceedings were instituted in the trial court to test the validity of that annexation. One was a petition for a writ of review to test the validity of the resolution of the city council of San Bruno ordering a special election relative to annexing Lomita Park, an inhabited area, and to review the legality of San Bruno's ordinance approving the annexation. The second action was in quo warranto to test the validity of the annexation. Both proceedings present the same legal issues. They were consolidated in the court below, and the parties stipulated that the final judgment in the quo warranto proceeding should be deemed to be the final judgment in the review proceeding. From a judgment validating the annexation this appeal is taken.

The basic facts are not in dispute and are set forth in a stipulation of the parties. The following diagram, roughly adapted from the map attached to the stipulation, will serve to explain the controversy:

Prior to November, 1949, all of Lomita Park, including areas "A" and "B," was unincorporated. On November 7, 1949, Millbrae, on petition of the Millbrae Elementary School District, started proceedings to annex area "B," which was uninhabited and owned by the school district. This area "B" contains approximately two acres and consists of a square city block. November 9, 1949, Millbrae filed the resolution in the form of a petition to the board of supervisors for annexation of the area. The board approved the resolution, and ordered a hearing on December 6, 1949. Such hearing was held, notice was published, and on January 17,

1950, the board of supervisors adopted its resolution approving the annexation of area "B" to Millbrae.

In the meantime San Bruno had been active. On November 17, 1949 (the same day the board approved the petition of Millbrae to annex area "B"), in apparent ignorance of the Millbrae annexation, notice of intention to circulate a petition for annexation to San Bruno of all of Lomita Park (areas "A" and "B") was published pursuant to the provisions of the Annexation Act of 1913. (Gov. Code, §§ 35100-35158.) On January 25, 1951, the city council of San Bruno adopted a resolution indicating an intention to call a special election of the residents of Lomita Park to vote on the proposed annexation. A petition had been received by the council signed by at least one-quarter of the qualified resident electors of Lomita Park requesting that such annexation election be held. On February 23, 1950, the city council of San Bruno adopted a resolution calling for an annexation referendum. The election was held in Lomita Park on April 25, 1950, on the question "Shall the unincorporated territory of Lomita Park be annexed to the City of San Bruno?" The canvass of votes was delayed because of certain legal proceedings until November 8, 1950, when it was determined that the annexation had been approved by a vote of 281 to 234.

Millbrae reacted to the San Bruno election by filing an action to review the San Bruno proceedings and to postpone the canvass of the San Bruno election. On November 8, 1950, a judgment was entered in that action which established the boundaries of Millbrae as including the school district area marked "B." That decision is final and is not challenged on this appeal. Thereafter, the canvass of votes in San Bruno was had as above mentioned.

Subsequently, San Bruno by ordinance declared the results of the election and approved the annexation. The ordinance carefully excluded from such approval area "B," which it recognized as already part of Millbrae.

The present actions were instituted against San Bruno and the members of its city council by certain taxpayers and electors who live in the inhabited portion of Lomita Park (area "A") and who are opposed to that area being incorporated into San Bruno.

On these basic facts the trial court ruled that the annexation of area "A" to San Bruno was valid. This determination is challenged by appellants.

It is conceded that in the notice of intention to cir-

culate a petition to annex Lomita Park to San Bruno, in the petition itself, in the resolution to call the annexation election and in the notice of election, Lomita Park was described as including both "A" and "B." But the annexation ordinance, passed after the election, only described area "A." The basic contention of appellants is that this rendered the annexation proceedings invalid.

Appellants first argue that since all the preliminary resolutions and ordinances up to the time of election described Lomita Park as including area "A" and the school district property, area "B," but all that was or could be annexed was area "A," that the voters were victims of a "deliberate attempt to mislead [them] . . . into believing that the School District Territory (B) would be included in the annexation. . . ." This, according to appellants, invalidated the entire annexation proceeding.

The same result is arrived at by arguments based on appellants' interpretation of the relevant statutes. It is pointed out that the Annexation Act of 1913 (Gov. Code, § 35100-35158) requires in each step of the proceedings, i.e., notice of intention to circulate petition to call annexation election (§ 35111), the petition (§ 35116), the resolution of intention to call the election (§ 35116), and the notice of election (§ 35124), that there be a description of the specific boundaries of the area proposed to be annexed. It is argued that these statutory requirements were inserted in the act to protect the voter, and that if the adoption ordinance describes one area ("A") while the preliminary proceedings describe another area ("A" and "B"), the proceedings are invalid for failure to follow the statutory requirements. It is argued that, since the electorate voted on the annexation of an entire area specifically described, the city council was without jurisdiction to annex a smaller area. Reliance is placed on section 35135 of the Government Code which empowers the city council after election to approve the annexation, it being contended that this means that the city council may approve the annexation of only the specific area described in the preliminary proceedings. As stated by appellants: "The jurisdiction of the Council, . . . ends with its right *to complete the annexation by ordinance,* . . . It is vested with no discretion to change the boundaries of the area to be annexed." These arguments are bolstered by the provisions of section 35102 of the Government Code which provides: "If any election authorized by this article is not called or held in the

manner or within the time specified, all proceedings relating to the annexation are void.''

There would seem to be but little doubt that the annexation statute contemplates that the area to be annexed must be fully and fairly described in the proceedings, and that a city council, after an election, has no legal right to change, in any material degree, by the final annexation ordinance, the boundaries of the area to be annexed, by excluding land described in the preliminary proceedings, or by including land not there described. But this does not mean that every minor and unimportant defect will invalidate the proceedings. The fundamental purpose of the regulatory provisions of the statute is to assure a fair election to the property owners in the area to be annexed, and to assure them that they will not be imposed upon or misled.

Where the error is a minor one that could not possibly have affected the results of the election, and could not possibly have misled the voters, the rule of *de minimis* applies. The courts should not so technically construe such statutes as to compel absolute and literal compliance with every word contained therein, because to do so, in many cases, would result in defeating the will of the majority in situations where no one was or could be misled.

There seems to be no California case directly in point so interpreting this annexation statute. But the principle is a familiar one, and has been recognized in interpreting a comparable statute. In *People* v. *City of Los Angeles*, 9 Cal. App.2d 431 [50 P.2d 101], there was involved the statute permitting the consolidation of two cities (Stats. 1913, p. 577, chap. 311), and the court was called upon to evaluate various errors committed in the course of the election. The consolidation statute contained a provision almost identical with the one above quoted from the annexation statute, to the effect that if an election was not called or held in the manner specified, all proceedings were void. It was first held that ''the courts will not intervene for technical or trivial reasons to set aside the will of the people as expressed at an election.'' (P. 436.) Then the court referred to the ''wholesome doctrine that election laws are to be liberally construed to the end that when an election has been held the expressed will of the electors . . . will not be vitiated by any court because of any error committed in the course of the election, so long as the error complained of is not one which was likely to change the result of an election or one actually affecting the result of

such election." (P. 438.) In referring to the penalty clause of the statute the court stated (p. 438): "It seems rather clear that this penalty [declaring all proceedings void] was never meant to apply to an inconsequential variance in the actual election." The court concluded (p. 440): "In spite of the irregularities and slight deviations from normal stressed by appellant in this proceeding, we feel that the courts should, where possible, give effect to the expressed will of the people as indicated at an election at which the issues were clearly presented to the electorate and where there was no possibility of serious misunderstanding as to the points involved." The theory of this case is here applicable.

What was the nature of the variance here? Could it possibly have affected the results of the election? Was anyone injured as a result of the variance? Did it affect the fairness of the election? In answering these questions the trial judge, the Honorable Murray Draper, in his minute order ordering judgment for respondents, stated: "This court fully recognizes the importance of a proper description of lands proposed to be annexed, so that the electors may be fully advised at the time of voting. Here, however, the proceedings for annexation of the school area to Millbrae were widely known [at the time of election]. Further, the land is uninhabited, it is not taxable, and its annexation to either city would have no effect upon the boundaries of the school district nor upon the right of children, wherever resident, to attend the school in which they were students before the annexation."

To this evaluation, with which we agree, can be added the following comments: Not only is there involved but one square block of a quite large area, and not only is that square block uninhabited and nontaxable, but, in addition, the evidence does not show the slightest bad faith on the part of San Bruno. Quite obviously, San Bruno was not aware of the commencement of the Millbrae annexation of the school district block when it commenced its proceedings to annex all of Lomita Park. Once it had been determined that that square block had been annexed to Millbrae, San Bruno moved to correct its error by deleting the square block from the ordinance approving the election. It is true that the election had then been held, but it not only appears, as pointed out by the trial judge, that at that time the fact that Millbrae claimed the school land was widely known because of the dis-

pute between the parties, but the voters at that election were not told that they were voting to include the school land. The proposition submitted to them was "Shall the unincorporated territory of Lomita Park be annexed to the City of San Bruno?" At the time of that election, as was well known, the school land had been already annexed to Millbrae and was therefore not part of the "unincorporated territory of Lomita Park." Thus, the election was fair, the voters were not misled, the results of the election were not affected by the error, and no one was or could have been injured because of the variance.

Counsel cite cases from other states, some upholding annexations in spite of defects in procedure or description, and some refusing to uphold such annexations for such reasons, but such cases are of little help in the instant case. The importance or effect of a variance necessarily depends upon the facts of each case. Here it must be held that the misdescription was a mere technical error that did not in any way affect the election. This being so, it must be regarded as *de minimis*, and therefore disregarded.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 23, 1954. Carter, J., Traynor, J., and Schauer, J., were of the opinion that the petition should be granted.