INCORPORATED TOWN OF WINDSOR HEIGHTS, appellee, v. CLARK COLBY et al., appellants.

No. 49454.

(Reported in 89 N.W.2d 157)

April 9, 1958.

Joseph M. Coppola and Volney Diltz, both of Des Moines, for appellants.

Rice & Rice and John Fletcher, all of Mapleton, and Warren Fletcher, of Des Moines, for appellee.

WENNERSTRUM, J.—This appeal has developed by reason of action taken by the council of the Town of Windsor Heights, Iowa, an incorporated municipality, for the annexation of territory contiguous to it. Litigation relative to a portion of the proposed territory here involved was before this court in State ex rel. Mercer v. Incorporated Town of Crestwood, 248 Iowa 627, 80 N.W.2d 489, 81 N.W.2d 452, a quo warranto proceedings. The matters therein considered are not involved in the present appeal. The defendants in the present action maintain there was a misdescription of the property sought to be annexed and it is further contended the statute was not followed in regard to the manner the property owners were ascertained. The trial court held contrary to the claims of the defendants and they have appealed.

The present case involves residents of an area in addition to those who reside in what was sought to be incorporated as the Town of Crestwood in the prior action. In seeking to comply with section 362.26, 1954 Code, the area now sought to be annexed was described in the council proceeding, on the election ballot, and in the petition in the court action relative to the annexation, as follows:

"Commencing at the intersection of 63rd Street and College Avenue, being the Northeast corner of the present corporation limits of the Town of Windsor Heights; thence north to Hickman Avenue; thence West on the South side of Hickman Avenue *to where it intersects Walnut Creek;* thence Southerly along the East side of Walnut Creek to University Avenue; thence East on University Avenue to 73rd Street; thence South on the East side of 73rd Street to and including the area known as Rancho Grande, according to official plat of same; thence East on the center line of Center Street to 63rd Street; thence North on 63rd Street to College Avenue, the place of beginning, except such part of the area lying within the described boundaries as is now within the Corporate Limits of the Town of Windsor Heights, Iowa." (Emphasis supplied.)

It is the contention of the defendants the description heretofore set out was erroneous in that it is claimed the stream referred to in the description as Walnut Creek was not in fact that creek, but a branch or tributary of it which has been known as

North Walnut Creek. It is further contended Hickman Avenue and Highway 6 are similar thoroughfares in the City of Des Moines, which adjoin a portion of the territory sought to be annexed, and there is no clearly defined place outside the City of Des Moines where Hickman Avenue ceases and the highway commences to be known only as Highway 6. It is further contended by the defendants Walnut Creek proper intersects Highway 6 outside the City of Des Moines and at a point approximately three miles west of the place the stream referred to in the proceedings crosses Hickman Avenue.

The trial court in its findings of fact and conclusions of law held the petition filed in this case carried a description of the territory sought to be annexed which was at least technically incorrect and not in keeping with what the council intended to do. It therein made a statement of the situation which succinctly sets forth the situation and we shall quote that part of its opinion which pertains to the description:

"* * * The description was by metes and bounds and commenced at the intersection of 63rd Street and College Avenue, being the northeast corner of the corporation limits of Windsor Heights; thence north to Hickman Avenue; 'thence west on the south side of Hickman Avenue to where it intersects Walnut Creek;' thence southerly along the east side of Walnut Creek to University Avenue; thence east and then south; thence east again to 63rd Street and then north on 63rd Street to College Avenue, the place of beginning.

"The part of the description in question is that part which is in quotation marks above set forth.

"It appears from the official plats and maps, some of them at least, that in going 'thence west on the south side of Hickman Avenue to where it intersects Walnut Creek' that the name of the creek that Hickman intersected was North Walnut Creek and that there is another creek called Walnut Creek which is in fact some two and a half or three miles west of North Walnut Creek. Hickman Avenue does not intersect this Walnut Creek. When the extension of Hickman Avenue gets that far to the west it is called Highway No. 6. It is the position of the defendants that since there was a misdescription arising as above set forth

in all of the proceedings of the council as well as the allegation in plaintiff's petition, that this is fatal to plaintiff's claim for annexation and that plaintiff should fail in its attempt to annex the proposed territory.

"There was attached to plaintiff's petition a plat, within the perimeter of which lay the land which plaintiff sought to annex and it was within this limited area from which the owners' names were taken. No attempt was made by the City of Windsor Heights to include the area west of North Walnut Creek and it is a misdescription but is corrected by the plat and identified by the plat and there never was an intention on the part of the city officials to include in the annexation area land west of North Walnut Creek. It is referred to in the evidence and some plats or maps variously as Walnut Creek or N. Walnut Creek and once as Little Creek, that is, a creek which intersects Hickman and University. Another map showed no name at all for this creek.

"Moreover, all of the exhibits showing this stream show that a stream thereon shown as Walnut Creek lying west of the creek intended in the perimeter description, proceeds in an almost easterly by southeasterly direction from U. S. Highway 6, that it intersected what was shown on one of the exhibits as U. S. Highway 6, and that it never intersected University Avenue. All of the exhibits clearly show that the creek intended by the council of Windsor Heights to be a part of the perimeter, did intersect Hickman and proceeded in a southwesterly direction to intersect University. There is no other creek in the vicinity or shown by the evidence that intersects with Hickman or that intersects with University or that takes a southerly direction which the creek proceeds from Hickman to University."

■ We hold, as did the trial court, and for the reasons stated by it, the language as set forth at various phases of the proceeding does not constitute such substantial misdescription of the area involved as to make the annexation proceeding invalid. There could be only one creek which would intersect University Avenue and that would be what has been termed in the evidence as North Walnut Creek. This watercourse, as a tributary to the larger Walnut Creek sufficiently described the area involved. We hold this possible and technical misdescription

would not misinform any of the parties involved and is not a sufficient basis for reversal.

■ II. It has been the holding of various courts the failure to literally comply with every word of the statutory directions is not fatal to an annexation proceeding. Municipal Law, Rhyne, 1957, section 2-34, page 33. It has also been held substantial compliance with statutes relating to annexation is sufficient and is not grounds for holding the proceedings invalid. 62 C. J. S., Municipal Corporations, section 51, page 149. See also People ex rel. Klevesahl v. City of San Bruno, 124 Cal. App.2d 790, 269 P.2d 211, 214; Jefferson Union Sch. Dist. v. City Council of City of Sunnyvale, 129 Cal. App.2d 264, 277 P.2d 104, 105, 106; Cornelius v. Fargo, N. D., 74 N.W.2d 91; Missouri-Kansas-Texas R. Co. v. Maltsberger, 189 Okla. 363, 116 P.2d 977, 983.

■ III. In McQuillin on Municipal Corporations, section 7.14, page 290, it is stated the rule is that statutes providing for the method of extending corporate boundaries "* * * are to be construed liberally in favor of the public."

■ We have taken a similar attitude in connection with school reorganization matters. In State ex rel. Warrington v. Community School District of St. Ansgar, 247 Iowa 1167, 1178, 1179, 78 N.W.2d 86, 93, we quoted from Zilske v. Albers, 238 Iowa 1050, 1056, 29 N.W.2d 189, 192, where we stated: " 'We have held emphatically that the statutes here in question are to be liberally construed. * * * Courts will go no further than to see that the methods pursued are in substantial accord with those prescribed by statute.' " And we also therein quoted from State ex rel. Ondler v. Rowe, 187 Iowa 1116, 1123, 175 N.W. 32, 34, as follows: " '* * * if such perfection of proceedings is to be demanded of them, few, if any, organizations of school districts could successfully withstand attacks at the hands of discordant and contentious minorities. The courts very properly * * * go to the limit of liberality in giving effect to the voice of a majority, wherever it can reasonably be done without violence to the manifest spirit and intent of the legislature.' "

The foregoing expressions can well be applied in the matters herein considered. We do not approve of an interpretation which results in a holding of illegality where it is apparent a possible

technical misdescription has in no way affected the rights of those most vitally concerned.

IV. In section 362.26, 1954 Code, it is provided if the proposition of the annexation is adopted by a majority of those voting thereon the council shall cause to be filed in the district court a suit in equity against the owners of the property proposed to be annexed. And it is further therein provided: "5. The petition shall contain: *a*. A description of the perimeter of the entire property proposed to be annexed and a list of each property owner therein *as shown by the plat books in the office of the county auditor*." (Emphasis supplied.) It is the contention of the defendants the list of property owners named in the petition was not compiled in the manner as provided in the statute.

A deputy county auditor testified he had prepared a list of the owners involved in the legal description furnished him by one of the attorneys representing the plaintiff. He testified: "I worked with the addressograph plates and made the list of property owners from the plates. I did not make the list of property owners from any other official records in the auditor's office except the addressograph plates." He also in substance testified he did not make up the sheets on which the names were written from any official book in the auditor's office and he did not compare it for correctness with the official records in that office.

In connection with the manner in which a change of title is made in the auditor's office the witness testified: "When the deed is received from the recorder's office, we first refer to the index to locate the transfer book and plat book that it will be entered into; and then we proceed to write the name on the plat book in pencil and in ink on the transfer book which is the running record of real estate for that plat or section of ground, whichever it may be; and it is indexed in our index book. From this deed a copy is typed out or taken off in longhand referring to the name of the grantee and grantor and legal description as shown on the deed, and while the deed is sent back to the Recorder's Office, we retain what we call a change of ownership and description and it goes down to the auditor's tax department, and is processed onto these plates, whether it be a name change or the legal description change, it reflects directly on these addressograph plates."

It is the conclusion of this court that although the names shown on the papers prepared by the witness were taken from the addressograph plates, yet it is apparent the statutory provision regarding the placing of names on the plat book is followed and names that appear on the addressograph plates actually reflect what is shown by the plat book. We hold there has been a substantial and sufficient compliance with the statute relative to the taking of the names from the plat book. Our comments in Division III hereof have equal application to the proposition discussed in this division.

Although it is our holding there has been a sufficient and substantial compliance with the statute, it is of interest to note counsel for the defendants made a stipulation relative to the list the deputy county auditor prepared. This was after the witness had testified he worked in the tax department of the auditor's office and it was the duty in that department to make tax records, books for taxation, "* * * and to keep addressograph plates of the names on the tax lists. Those were my duties at that time." The record made by defendants' counsel is as follows: "It is stipulated by and between the parties in view of the witness' testimony that he personally prepared these sheets by copying the same directly from the original records in the office of the Recorder of Polk County—Auditor of Polk County, sometime shortly prior to the 19th day of January, 1956. In other words, the defendants will admit that Exhibit 3 is that sort of an instrument or document, or collection of documents, and we make no objection to its admission for any purpose for which it may be admissible in this case, subject only to any correction that might be found to be made necessary by a comparison between these sheets and the original for the purpose of discovering typographical errors if any. Is that agreeable?" It was so agreed.

Although we do not hold the stipulation entered into is determinative of the issue discussed in this division, yet upon the entire record made we hold there has been proof of a substantial compliance with the statute. It would have been a simple matter to have shown any discrepancy between the plat books and the addressograph plates, if such there were, but no such showing was made.

We find no basis for reversal and consequently the judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.