CITY OF CLINTON, a Municipal Corporation, Clinton County, Iowa, Appellee,

v.

The OWNERS OF the PROPERTY SITUATED WITHIN CERTAIN DESCRIBED BOUNDARIES, Appellants.

No. 54635.

Supreme Court of Iowa.

Nov. 11, 1971.

Lane & Waterman, Davenport, for appellants.

Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, for appellee.

REYNOLDSON, Justice.

This is an equity action for the annexation of certain territory by the city of Clinton under §§ 362.26 and 362.27, Code, 1966. From decree of trial court ordering the annexation, defendants appeal. We affirm.

In March 1964 a comprehensive plan for plaintiff city was prepared by Harland Bartholomew and Associates of St. Louis, Missouri. Acceptance by city council resolution followed on February 22, 1965. This master plan described Clinton as then including an area of about 12 square miles, approximately one-fourth of which was unusable land, and water areas. Projecting a population growth from 34,500 (estimated) in 1964 to a 1985 figure of 65,000, Bartholomew proposed annexation of a designated area comprising about seven square miles.

On October 10, 1966, however, Clinton council, following a proposal of the city plan commission, passed a resolution directing published notice of public hearing to consider a resolution for annexation of about 22½ square miles. The area proposed to be incorporated within the city limits extended westward for from 4½ to 6½ miles. It included the city airport and a private golf course. The boundaries "hooked" partially around an industrial area which by moratorium agreement with city of Comanche could not be annexed by either city until 1972. With the exceptions of the airport, golf course, and Pine Knoll Trailer Court, most of the area was farm land. Population of this tract was variously estimated to be 750 to 1200 persons. About 360 of these persons resided in the trailer court.

At public hearing on October 24, 1966 the council heard numerous objections and resolved the proposed annexation be submitted to voters of Clinton on November 29, 1966. At that time [before enactment of 63 G.A. ch. 1180, § 1 (1970)] residents of the territory proposed to be annexed were not permitted to vote. Following the three week publication of notice of election required by § 362.26(3), Code, 1966, the election was held, resulting in 5058 votes for the annexation; 3965 votes against; and 110 spoiled ballots. As required by § 362.26(5) Clinton filed its petition for annexation in district court on March 17, 1967.

Defendants, constituting a majority of the property owners in the annexation terri-

tory, rely on four propositions for reversal, based upon alleged procedural and substantive errors. We consider these propositions in separate divisions.

I. *Did plaintiff fail to comply with statutory requirements of § 362.26(3) and § 362.26(4)?*

Section 362.26(3), Code, 1966, provides the form for the annexation proposition ballot which shall, "set out [the] legal description of the territory." Section 362.-26(4) requires the petition (to be filed in district court following vote of annexation) to state, " * * * under a resolution of the council, *the territory therein described* was authorized by the voters of said city to be annexed * * *." (Emphasis supplied.)

Error in this procedural requirement of a "legal description" in the ballot form, incorporated by reference in the mandatory petition allegation, was first raised by special appearance filed on behalf of 358 defendant property owners. They alleged no jurisdiction of the parties or subject matter was obtained because the description was fatally deficient in that 1) it was not a metes and bounds description which would meet the test of a "legal description," 2) it made reference by exception to territory presently within the city of Clinton and the city of Comanche without describing it, and 3) it excepted a railroad right of way without defining it.

It is true the ballot description of the annexation territory was not by metes and bounds. Generally, the description was by governmental survey units, with exceptions for portions already within corporate limits of Clinton or Comanche. The description concluded.

"Also except all that part of the Davenport, Rock Island and Northwestern Railway Co.'s right of way extending from the north line of Section 23, Township 81 north, Range 6 east of the 5th P.M., westerly to the center line of Millcreek."

We have said failure to literally comply with every word of the annexation statute is not fatal. City of Ames v. Olson, 253 Iowa 983, 114 N.W.2d 904 (1962). We have held substantial compliance with statutory procedure is sufficient and that statutes providing for the method of extending corporate boundaries are to be construed liberally in favor of the public. City of Cedar Rapids v. Cox, 250 Iowa 457, 93 N.W.2d 216 (1958); Incorporated Town of Windsor Heights v. Colby, 249 Iowa 802, 89 N.W.2d 157 (1958). See also 2 E. McQuillin, Municipal Corporations § 7.14, pp. 328–329 (3d ed. rev. 1966). Considering defendants' proposition in light of these rules, we find there was substantial compliance with the statute. Section 362.26(3) does not mandate a metes and bounds description.

Complaint is made the annexation area cannot be ascertained without an independent identification of the boundary lines of Clinton and Comanche. The function of a description required by § 362.26(3) would appear to be similar to the office of a description in a deed. In that connection it has been authoritatively stated,

"The office of the description is to identify or furnish the means of identifying the property conveyed. Indeed it may be said that the office of a description is not to identify the land, but to furnish the means of identification. The description will be sufficiently certain when from it the property can be identified either by a person who is familiar with the locality or by an actual survey. It is not essential that the deed contain such description as will enable the identification to be made without the aid of extrinsic facts." G. Thompson, Real Property § 3020, pp. 438–439 (1962 repl.)

Still more relevant is the decision of this court in Smith v. Blairsburg Independent School Dist., 179 Iowa 500, 159 N.W. 1027 (1916). That case involved validity of a school district reorganization. The statute required the petition to de-

scribe "the boundaries of the contiguous territory." The petition contained a description drafted similarly to the one in this case. We said at 179 Iowa 506, 159 N.W. 1028–1029:

"A petition such as the statute requires need not follow any set form. All essential [sic] is that the boundaries of the proposed district be indicated, and that the territory therein be contiguous. * * It is not very material whether * * * the entire body to be included therein be indicated by specifying the different tracts to constitute the proposed district, or the boundary lines only be designated. It is enough if the petition as a whole indicate the boundaries of the proposed district in any definite manner * * *."

The description used on the ballot in the case at bar was a "legal description" under the rule laid down in the *Blairsburg case*, supra.

■ The railroad right of way exception contained in this description is not unlike exceptions frequently found in deeds and abstracts. There is no showing anyone owned this area other than the railroad. It was not a party to this action. There is no indication anyone was misled by this description or that it affected the rights of those most vitally concerned.

We find the ballot description as incorporated in the petition was in substantial compliance with the statute. The infirmities complained of are not sufficient to invalidate the proceedings.

II. *Did the district court obtain jurisdiction of the person of all landowners in the annexation area, as shown by the plat book?*

■ Plaintiff city admits certain landowners were omitted from the petition as filed, and from the first notice of filing. Defendants assigned this and the claimed failure to mail notice under rule 60.1, Rules of Civil Procedure as jurisdictional basis for their special appearance. They further

complain there was no search for property owners on the date petition was filed, but both before and after. The last search resulted in additional persons being made defendants. The court then ordered all such additional landowners brought into the case as indispensable parties.

The controlling case on this issue is City of Cedar Rapids v. Cox, 250 Iowa 457, 93 N.W.2d 216 (1959), where, as here, additional landowners were discovered and brought in by order after petition was filed. We there said,

" * * * [T]he court held there were eight owners of property in the territory to be annexed, as shown by the platbooks in the office of the county auditor, who were not made defendants.

" * * * It is argued that having held there were indispensable parties not made defendants the court was compelled to dismiss the action and could not order them brought in.

"The argument is without merit. The trial court proceeded strictly in accord with rule 25(c), R.C.P., which states, 'If an indispensable party is not before the court, it shall order him brought in.'" (250 Iowa at 465, 93 N.W.2d at 221.)

In the case before us the petition was amended to name the omitted owners. The record shows notice of filing petition, including the additional owners and extended description, was then republished pursuant to § 362.27.

■ Defendants alleged further jurisdictional defect, claiming notice was not mailed to defendant property owners as required by rule 60.1, R.C.P. City of Cedar Rapids v. Cox, 250 Iowa 457, 93 N.W.2d 216 (1959) held failure to comply with rule 60.1, R.C.P., was not a violation of the due process requirements of the federal and state constitutions. We are not required to decide whether the rule applies here, because the record shows substantial compliance with rule 60.1. Proper affidavits

showing such service by mail are in evidence. While addresses of some defendants were not obtained after alleged diligent inquiry, defendants do not indicate how more effective efforts could have been made.

We find jurisdiction of the landowners was obtained.

III. *Did district court obtain jurisdiction of the subject matter of the litigation?*

Section 362.26(5) relevantly provides,

"5. The petition shall contain:

  a. A description of the perimeter of the entire property proposed to be annexed and a list of each property owner therein as shown by the plat books in the office of the county auditor or auditors.

\*   \*   \*   \*   \*   \*

  c. A plat of such territory showing its relation to the corporate limits \* \* \*."

Defendants contend when a petition does not contain a description of the perimeter of the annexation area, does not list names of all property owners and does not contain a precise, accurate and scaled plat, the court has no jurisdiction of the subject matter. These issues were raised by special appearance and preserved in the answer.

■ The description set out in the petition would likely be more meaningful to a layman interested in knowing whether his property was within or without the territory than would a metes and bounds description. We quoted from Smith v. Blairsburg Independent School Dist., 179 Iowa 500, 159 N.W. 1027 (1916) in Division I of this opinion. It is determinative of this issue. The identification of the governmental survey units in the petition description is sufficient to indicate the perimeter of the annexation territory.

We have also held, in the prior division, additional landowners may be brought in, as additional indispensable parties, under rule 25(c), R.C.P. The Code specifies no date for identification of landowners. In many cases it would be virtually impossible to search all plat books on the date of petition filing. The statute is satisfied by a good faith effort coupled with jurisdiction of all such owners before trial.

The plat originally attached to the petition was 12 inches by 14 inches. In the attempt to show the 22½ square mile area, a scale of one inch to 4000 feet was adopted. It did not show the proposed annexation of a portion of Beaver Island. It did show the general relation of the annexation area ·to the city of Clinton. Pertinent on this point is what this court said of a similar issue raised in City of Ames v. Olson, 253 Iowa 983, 990, 114 N.W.2d 904, 908 (1962):

"Some of the words and figures appearing on the plat are in very small print and difficult to read, but they do not relate to the matters in issue here and in no way deprive the court of jurisdiction."

The area of Beaver Island not included in the original plat attached to the petition was described in the resolution and ballot proceedings and appears from the aerial map to be uninhabited.

Defendants do not show anyone was prejudiced by the above alleged defects in the petition.

After the special appearance was filed, plaintiff amended, adding a metes and bounds description of the territory, additional names of property owners, and a more detailed plat.

Defendants assert if the trial court did not have jurisdiction of the subject matter upon filing the petition, it is without judicial power and authority to later examine amendments by which it can then acquire jurisdiction after the fact. Clinton contends

the district court did have jurisdiction of the subject matter and the issues raised in defendants' special appearance should have been raised by motion to dismiss. In that event, city's right to amend before ruling would have been unquestioned.

Jurisdiction of the subject matter is the power to hear and determine cases of the general class to which the proceedings belong. Green v. Sherman, 173 N.W. 2d 843 (Iowa 1970); Hargis v. Fleck, 261 Iowa 1031, 157 N.W.2d 103 (1968). The power to hear and determine this case at district court level is conferred by § 362.26. In Appeal of McLain, 189 Iowa 264, 269, 176 N.W. 817, 819 (1920) we said,

"* * * [J]urisdiction of the subject-matter is conferred by operation of law, and not by act of the parties or by procedure of the court. It cannot be ousted by act of the parties, if it exists, nor conferred by such acts, if it does not exist. Its existence antedates the particular litigation, and is not conferred by the litigation or by its procedure."

Where jurisdiction of the subject matter exists neither insufficiency of allegation nor informality in proceedings will affect that jurisdiction. Reed v. City of Muscatine, 104 Iowa 183, 73 N.W. 579 (1897).

Care must be taken to distinguish between jurisdiction of the subject matter generally and jurisdiction of the particular subject of the controversy. The latter was involved in Town of Clive v. Colby, 255 Iowa 483, 123 N.W.2d 331 (1963) and in State ex rel. Mercer v. Incorporated Town of Crestwood, 248 Iowa 627, 80 N.W.2d 489 (1957), where clashes between contending municipalities over the annexation area obligated trial court to determine which had prior "jurisdiction" to annex. The factual determination of proceedings and conditions precedent to annexation that trial court is mandated to make by § 362.26(6) has been called an examination of jurisdictional facts. Yeager, City and Town Boundaries,

19 Drake L.Rev. 1, 17 (1969). This involves *jurisdiction of the municipality to annex*, as the author indicates, and does not refer to jurisdiction of the court over the subject matter.

We hold defendants' special appearance in this case did not deprive Clinton of the right to amend its petition. Trial court allowed the petition amendment, which provided a metes and bounds description and a corrected plat. Notice under § 362.27 was then republished. There is no statutory time fixed following the election within which the petition is required to be filed. Allegations of the petition were clearly sufficient to bring the matter before trial court and the amendment made the petition unassailable. Defendants' special appearance was properly overruled.

IV. *Did plaintiff city of Clinton affirmatively show it was capable of extending into the annexation area substantial municipal services and benefits not theretofore enjoyed by such territory?*

Statement of the above issue, raised by defendants' fourth proposition relied on for reversal, is based on the requirement of § 362.26(6). That subsection requires the corollary finding that the annexation not merely result in increasing tax revenue and the additional finding that all proceedings and conditions precedent to annexation as required by subsections one through five have been duly instituted and carried out. These are factual determinations. If found in the affirmative, the court must decree annexation. Annexation is a legislative function which under the constitutional separation of powers cannot be delegated to the courts except for this narrow fact finding determination. The court has no discretionary power to determine whether the proposal is good or bad, wise or unwise. City of Cedar Falls v. Sieglaff, 259 Iowa 263, 144 N.W.2d 116 (1966); City of Cedar Rapids v. Cox, 252 Iowa 948, 108 N.W.2d 253 (1961).

It is not the privilege of the court to decree annexation of only part of the territory sought. City of Ames v. Olson, 253 Iowa 983, 114 N.W.2d 904 (1962). If the city is justified in enlarging its limits it is not for the trial court or defendants to say in which direction it goes. Selection of the adjoining territory to be annexed is a legislative matter for the city to determine. City of Bettendorf v. Abeln, 261 Iowa 404, 154 N.W.2d 836 (1967).

Our review is de novo in this equity case. Section 624.4, Code, 1971; rule 334, R.C.P. Especially when considering the credibility of witnesses we give weight to the fact findings of the trial court but are not bound by them. Rule 344(f) (7), R.C.P.

Our opinions have reiterated the following statement from City of Des Moines v. Lampart, 248 Iowa 1032, 1038, 82 N.W.2d 720, 724 (1957):

"The court was not required to determine *how* capable plaintiff must be, nor *how* substantial must be the municipal services and benefits furnished—only whether there was an 'affirmative showing.'"

The question of municipal capability is to be determined as of the date annexation proceedings are initiated rather than at time of trial. Town of Clive v. Colby, 255 Iowa 483, 121 N.W.2d 115 (1963).

The issue turns on capability of the municipal corporation and not the needs or desires of the property owner. City of Bettendorf v. Abeln, 261 Iowa 404, 154 N.W.2d 836 (1967); City of Cedar Rapids v. Cox, 252 Iowa 948, 108 N.W.2d 253 (1961). The municipality is not required to show the services and benefits offered are necessary to the territory sought to be annexed, nor is there anything in the statute requiring a showing of special benefit to a particular piece of property. Town

of Coralville v. Great Lakes Pipe Line Company, 253 Iowa 23, 110 N.W.2d 375 (1961).

Most of the 472 page record on this appeal consists of evidence relating to this proposition. It was the fighting issue at trial. The record, together with the vigor and resourcefulness of defendants' arguments, make the question a close one.

Following the drafting of the Bartholomew report, a flood in 1965 disastrously demonstrated a large area of Clinton, previously deemed available for industry, was no longer suitable for such purpose. Large industries located in the moratorium area on the city's southwest flank indicated the land west of Clinton was desirable for plant location. Clinton municipal airport is in the western reaches of the annexation territory. All these considerations make the city's action in instituting annexation proceedings for the larger tract understandable.

The city on October 10, 1966 had a large, fully equipped and well trained police department which operated around the clock. The chief testified all services of this department could be extended immediately into the annexation area. In addition to the force then existing (38 men) four more officers would be required. This additional personnel, together with an additional patrol car, would permit the same level of police protection throughout the extended city limits as was then enjoyed by the present city.

In the opinion of the fire chief, an addition of 12 men and three vehicles to the then existing fire department would have permitted all services of his department to be extended to the territory proposed to be incorporated into the city. On the critical date, October 10, 1966, Clinton had a full time, fully equipped and well trained fire department consisting of 42 men. These firemen underwent rigorous training routinely. While the annexation area was at that time well served by several local vol-

unteer groups, Clinton's fire department was in position to immediately extend ambulance service, and the benefits of fire inspection, fire prevention and investigation, then absent in the territory.

Clinton had a fully equipped and full time street maintenance department. For emergency snow removal it had agreements with independent contractors for use of additional equipment when needed. The street commissioner testified his department had 18 regular employees and a total of 32 for emergency call-out. He testified his department could immediately extend all its services into the annexation territory.

The record indicates Clinton's sanitation department had a permanent complement of ten men. Equipment consisted of four 16 cubic yard garbage trucks and a crawler type tractor at the sanitary landfill area leased by the city. Garbage collection could be immediately extended into the territory to be annexed, without addition of men or equipment. Such service was nonexistent in that area on October 10, 1966.

Clinton's water needs were served by a franchised private company. Water was obtained from six deep wells. Pumping capacity was about four times the maximum daily consumption in October 1966. The manager of the water company testified, under the franchise agreement with Clinton the latter could order the company to extend mains. The agreement required company to furnish one fire hydrant each 500 feet on a main, the city paying an annual rent of $43.00 per hydrant. Water could be immediately furnished to some area residents; it would be possible but uneconomical for both company and city to immediately extend water service to the few westernmost residents of the territory. Our inquiry here relates to capability, not economic practicality. Referring to water and sewer extensions into a proposed annexation area, we said in City of Cedar Rapids v. Cox, 252 Iowa 948, 956, 108 N.W. 2d 253, 258 (1961), "Whether or not such

a program would be financially feasible or financially attractive is an entirely different matter." It is not necessary that all services be extended forthwith. Town of Grimes v. Adel Clay Products Co., 256 Iowa 145, 126 N.W.2d 270 (1964).

Sewage treatment facilities in Clinton were modern, fully equipped and staffed, according to testimony of its manager and the city engineer. A new treatment plant went into operation in 1964. Evidence was persuasive the city had capacity, from an engineering and financing viewpoint, to extend sewers into the area as requested and as need developed.

Interstate Power Company was franchised by Clinton to furnish gas and electricity at specified rates. It was furnishing electricity to some area residents on October 10, 1966. As to those, annexation would result in lower rates. Annexation would allow territory residents to take advantage of the gas main extension agreement. The power company was obligated to install street lights on direction of the city council.

Other municipal services immediately available to the annexation area on October 10, 1966, under this record, included a park system, a supervised recreation system, city planning department, municipal library facilities, municipal airport and full-time city engineering services. Clinton had a zoning ordinance and a zoning commission.

These particular municipal services were not enjoyed by the annexation area before October 10, 1966. Pertinent here is the observation made in City of Cedar Falls v. Sieglaff, 259 Iowa 263, 269–70, 144 N.W.2d 116, 120 (1966):

> "The limited services previously furnished the area to be annexed * * * are for the most part such as a county usually furnishes rural areas through its road supervisor, sheriff and county zoning commission. They can hardly be classed substantial municipal services and benefits."

Of prime importance was the financial capability of Clinton, on October 10, 1966, to expand and extend its services and benefits. The fire department had a fund of $22,000.00 built up to purchase additional equipment. In 1966 total millage levied for the seven functional funds was about 21 mills. The legally permitted millage was 30 mills. At that time increase to the total legal millage would have produced ample funds to enlarge the vital service departments. Clinton's general obligation bond indebtedness was $655,000.00. Its bonding limit under state law was $4,860,780.00 over that amount. Funds derived from general obligation bonds were legally available for sewers, streets, fire stations, fire equipment and police equipment. Proof was introduced such bonds could have been readily marketed. Plaintiff city's ability to finance extension of its services and benefits was established by this record.

As of October 10, 1966 annexation of the area would have produced only $17,659.13 in additional revenue. More than this would have been required to enlarge the various departments to provide essential services. Obviously annexation was not sought merely to increase municipal revenues. Most of the territory was agricultural, and laid off in tracts of more than ten acres. Such land was not subject to tax for municipal purposes, except for one and one-half mills for street purposes. Section 404.15, Code, 1966.

The extent of the area here involved creates problems of logistics making the question a close one. We hold, however, Clinton did make an affirmative showing it is capable of extending into the annexation territory substantial municipal services and benefits not theretofore enjoyed by the area. Annexation will not result merely in increased tax revenue.

Consequently, decree of the district court is

Affirmed.

All Justices concur.