CITY OF MUSCATINE, Iowa, a Municipal Corporation, Appellee,

v.

Leroy A. WATERS et al., Defendants,

Richard A. Drawbaugh et al., Appellants.

No. 2–57636.

Supreme Court of Iowa.

March 16, 1977.

W. H. Bartley and T. L. Hinman, of Bartley, Bartley & Hinman, Iowa City, for appellants.

Harvey G. Allbee, Jr., City Atty., and Jon R. Pearce, Muscatine, for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, LeGRAND and UHLENHOPP, JJ.

RAWLINGS, Justice.

Richard A. Drawbaugh, et al. (defendants), appeal from decree of annexation upon petition filed by plaintiff, City of Muscatine. A partially conflicting purported voluntary annexation of real estate by the City of Fruitland was held to be ineffectively subordinate to the proceedings previously initiated by Muscatine. We affirm.

The involved facts are not in dispute. Muscatine is a municipal corporation.

July 20, 1972, its city council adopted a resolution directing the city clerk to publish notice of hearing on the annexation proposal as to the entire area here concerned, adjacent and contiguous to the City of Muscatine. Despite the mayor's veto the resolution was repassed July 24, by the city council.

August 2 and 9, notice of hearing on the adopted resolution was published. August 17, hearing thereon was held.

September 20, Fruitland adopted a resolution purporting to annex, by voluntary petition, approximately 64 acres of real estate (Strauseland), included within the territory embraced in the July 24, Muscatine resolution. These appealing defendants hold a possessory interest in Strauseland realty.

September 21, Muscatine passed another resolution ordering an election on the proposed annexation be held November 7, 1972. Additionally, the city clerk was directed to publish notice of such election pursuant to Section 362.26(3), The Code 1973. This publication was never effected.

November 7, after extensive election-related countywide publicity, the Muscatine annexation proposal was approved by a majority of eligible voters.

February 15, 1973, absence of the aforesaid election notice having been discovered, Muscatine adopted a second annexation resolution covering all of the original territory except the Strauseland tract. No further action was ever taken on the above noted second Muscatine resolution. It apparently died on the vine.

March 15, Muscatine adopted another resolution, this time authorizing effectuation of remedial legislative action to cure errors attendant upon its 1972 annexation election.

June 19, the Sixty-Fifth General Assembly, 1973 Session, adopted House File 732, thereby legalizing the aforesaid November 7, 1972, Muscatine election. This Act became effective July 5, 1973.

August 3, the involved Muscatine annexation petition was filed in Muscatine District Court. Code § 362.26(4), (5), (6).

May 6, 1974, or about 11 months after adoption of House File 732 and less than 24 hours before commencement of hearing on

Muscatine's August 3, 1973 petition, Fruitland filed a certified copy of its September 20, 1972, resolution in the Muscatine County Recorder's office. Code § 362.33. See also Chapter 368, The Code 1975, not here applicable.

No question is raised regarding Muscatine's ability to provide substantial municipal services and benefits not previously enjoyed by inhabitants of the entire proposed annexed area. And, defendants do not contend such territorial extension is sought by Muscatine merely for the purpose of increasing tax revenues.

Mindful of the foregoing, we turn now to these issues raised on appeal from adjudication by trial court adverse to defendants:

A. Whether Muscatine obtained exclusive jurisdiction over the entire area proposed to be annexed, thereby preempting Fruitland's authority to annex the 64 acre Strauseland tract.

B. Whether House File 732, by curing procedural defects in the 1972 election, retroactively conferred upon Muscatine renewed jurisdiction to annex the entire area.

C. Whether an error in legal description of the area involved in the Muscatine procedure invalidates these proceedings.

D. Whether Muscatine abandoned its exclusive jurisdiction over the disputed area or is estopped from asserting same.

■ I. Our review is de novo. We accord weight to trial court's findings but are not thereby bound. See *City of Decorah v. Peterson*, 203 N.W.2d 629, 631 (Iowa 1973).

■ It is also understood annexation is purely statutory. The legislature prescribes conditions under which a municipality may so extend its borders. See *Town of Grimes v. Bd. of Adjustment, Polk Cty.*, 243 N.W.2d 625, 629 (Iowa 1976). At the time here in question ch. 362, The Code 1973 (since repealed) regulated the involved processes.

II. Defendants concede Muscatine took the initial step toward annexation by adoption of the July 24, 1972, resolution directing its city clerk to publish notice of

hearing. See *State ex rel. Mercer v. Town of Crestwood*, 248 Iowa 627, 632–635, 80 N.W.2d 489 and 81 N.W.2d 452 (Supp. Opin.) (1957).

■ Where, as in this case, there is a dispute between two municipalities as to which has the right to annex a given territory, the one first initiating such proceedings thereby obtains exclusive annexation jurisdiction. See *Town of Grimes v. Bd. of Adjustment, Polk Cty.*, 243 N.W.2d at 629. Moreover, the entity first so legislatively acting ordinarily has the select right to complete its initiated program. See *State ex rel. Mercer v. Town of Crestwood*, 248 Iowa at 632–633, 80 N.W.2d 489; *Town of Clive v. Colby*, 255 Iowa 483, 493, 121 N.W.2d 115 and 123 N.W.2d 331 (Supp. Opin.) (1963).

On the other hand, substantial compliance with statutory requirements is usually essential to the above noted prior annexing jurisdiction. See *City of Clinton v. Owners of Property, Etc.*, 191 N.W.2d 671, 674 (Iowa 1971). As stated in *Town of Clive v. Colby*, 255 Iowa at 496, 123 N.W.2d at 333:

" 'A proceeding for the annexation of territory to a contiguous municipal corporation is ineffectual when instituted after the institution of a proceeding for the organization of the territory into a village or city, and while such proceeding is pending and undetermined. *However, annexation proceedings are not precluded where the pending incorporation proceedings do not comply with the statute, or are otherwise insufficient to deprive the annexing city of jurisdiction or authority to acquire the territory involved.*' (Emphasis added)."

See generally J. Yeager, "City and Town Boundaries—Incorporation, Consolidation, Annexation, and Severance Under the Iowa Statutes", 19 Drake L.Rev. 1, 16–17 (1969).

■ Thus, a municipality has exclusive jurisdiction to annex a given territory from the time its council directs publication of the required notice, but only if it is able to show existence of all "necessary jurisdictional facts". See 19 Drake L.Rev., at 17.

548

See also *City of Clinton v. Owners of Property, Etc.,* 191 N.W.2d at 677.

III. This brings us to an analysis of the above cited curative legislation.

House File 732 provides, in relevant part:

"WHEREAS, doubts have arisen concerning the validity and legal sufficiency of the proceedings of the City Council preliminary to such election and the validity and legal sufficiency of such election and it is deemed advisable to put such doubts and all others that might arise concerning same forever at rest; NOW, THEREFORE,

"*Be It Enacted by the General Assembly of the State of Iowa:*

"SECTION 1. That all proceedings heretofore taken by the City Council of the City of Muscatine, Iowa, preliminary to and in connection with the election on the proposition of annexing the aforedescribed territory to the City of Muscatine, on November 7, 1972, and said election, are hereby legalized, validated and confirmed."

Defendants contend this legalizing Act cured nothing more than procedural flaws and did not retroactively vest renewed exclusive jurisdiction in Muscatine to annex the entire proposed area. Conversely, Muscatine argues the Act would be a complete nullity if it did not assure continuity of original and exclusive jurisdiction.

Prefatorily noted is an apt statement in 2 Sutherland, Statutory Construction, § 41.11 (4th ed. 1973):

"Generally, curative acts are made necessary by inadvertence or error in the original enactment of a statute or in its administration. Action under the statute is usually taken in good faith and no rights are jeopardized by the validation of the prior good faith action. Because of the beneficent policy thus served by curative legislation, to sustain the reliability of official actions and secure expectations formed in reliance thereon, they are in reason entitled to liberal construction in order to achieve full fruition of their remedial purposes."

This court also considered the character of such legislation in *McSurely v. McGrew,* 140 Iowa 163, 172, 118 N.W. 415, 419 (1908), and there stated:

"It is a little difficult to define a curative act. It is necessarily retrospective in character and undertakes to cure or validate errors or irregularities in legal or administrative proceedings, and to give effect to contracts for failure to comply with some technical requirement. *Meigs v. Roberts,* 162 N.Y. 371, 56 N.E. 838, 76 Am.St.Rep. 322. If the defects are jurisdictional or relate to substantive contract rights, they can not ordinarily be cured by a healing act. Generally speaking, the Legislature may by subsequent act validate and confirm previous acts of a corporation otherwise invalid. *Bridgeport v. Railroad,* 15 Conn. 475; *Mattingly v. Dist. of Col.,* 97 U.S. 687, 24 L.Ed. 1098; *McMillen v. Boyles,* 6 Iowa 304; Id., 391; *Atchison v. Butcher,* 3 Kan. 104; *San Francisco v. Real Estate,* 42 Cal. [513]; *Anderson v. Santa Anna,* 116 U.S. [356], 6 S.Ct. 413, 29 L.Ed. 633. This is in accord with the general rule that a curative act may be passed whenever the irregularity to be healed consists in the doing of some act, or the doing of it in such a manner as the Legislature might have made immaterial or have authorized by a prior law. *Boardman v. Beckwith,* 18 Iowa 292; *Richman v. Board,* 77 Iowa [513], 42 N.W. 422; *Windsor v. Des Moines,* 101 Iowa 343, 70 N.W. 214; *Witter v. Board,* 112 Iowa [380], 83 N.W. 1041. Such an act is of necessity special, and can not be made general, and its nonuniformity is no ground of attack. *Witter v. Board,* supra."

Cf. *Stanley v. Southwestern Com. Col. Merged Area, Etc.,* 184 N.W.2d 29 (Iowa 1971); *Iowa Elec. L. & P. Co. v. Town,* 221 Iowa 441, 264 N.W. 84 (1935); *Chicago, R. I. & P. R. Co. v. Rosenbaum,* 212 Iowa 227, 231 N.W. 646 (1930); *State v. Squires,* 26 Iowa 340 (1868); Charles S. Rhyne, Municipal Law, § 2–24 (1957).

▮ IV. The question initially posed is whether our General Assembly possessed

authority to effectively remedy Muscatine's election-related errors or omissions by enactment of the above noted healing legislation.

First on that subject, *Stanley v. Southwestern Com. Col. Merged Area, Etc.,* 184 N.W.2d at 37–38, says:

"The 'general rule' is 'that a curative act may be passed whenever the irregularity to be healed consists in the doing of some act, or the doing of it in such a manner as the Legislature might have made immaterial or have authorized by a prior law.' *McSurely v. McGrew* (1908), 140 Iowa 163, 172, 118 N.W. 415, 419. This is all that the legislature has done here.

"In *State v. Squires* (1868), 26 Iowa 340, this court upheld an act passed to cure irregularities in the formation of a school district which came under a similar attack. When the district was organized it had not contained the necessary three hundred inhabitants, nor had the required ten days notice of its organization been given, but it was held that since it was a matter of discretion with the legislature to require the performance of these condition precedents, it could waive a failure to perform them. * * *. 

" * * * if the defects are 'jurisdictional' or violative of 'substantive' or 'vested' rights they cannot ordinarily be cured by a healing act."

Also brought into play is this quote from *City of Cedar Rapids v. Cox,* 250 Iowa 457, 461, 93 N.W.2d 216, 218 (1958):

"We have held failure to provide for any notice and hearing on the question of annexation of territory to a municipality does not deprive owners of their property without due process of law. *Wertz v. City of Ottumwa,* 201 Iowa 947, 950–954, 208 N.W. 511. We said (at page 952 of 201 Iowa, at page 514 of 208 N.W.) the case was somewhat analogous to those where boundaries of school corporations may be changed by action of the boards of directors. See *Peterson v. Swan,* 231 Iowa 745, 752–753, 2 N.W.2d 70, 74, which quotes from the *Wertz* opinion. An early

case, *Morford v. Unger,* 8 Iowa 82, 88–89, holds the power of the legislature to create or enlarge boundaries of municipalities does not depend upon consent of the inhabitants. *City of Tucson v. Garrett,* 77 Ariz. 73, 267 P.2d 717, 719, holds notice or consent are unnecessary.

"The Iowa precedents just cited are approved in *City of Des Moines v. Lampart,* 248 Iowa 1032, 1036, 82 N.W.2d 720, 722."

Added to the foregoing is a more recent pronouncement in *City of Monticello v. Adams,* 200 N.W.2d 522, 524 (Iowa 1972):

"The United States Supreme Court has stated that municipal boundaries may be altered without the consent of the inhabitants of the territory affected and 'nothing' in the Federal Constitution is to the contrary. *Hunter v. City of Pittsburgh,* 207 U.S. 161, 179, 28 S.Ct. 40, 47, 52 L.Ed. 151, 159. Our decisions are in the same vein."

See also 19 Drake L.Rev. at 12–13.

It will at this point be recalled the pivotal deficiency in Muscatine's annexation process consisted of failure to publish notice of the related election. But, as heretofore revealed, the General Assembly could have previously dispensed with such requirement had it so determined. By the same token the legislature had requisite authority, via the subsequently adopted curative enactment, to waive the aforesaid notice requirement, and other procedural defects which may have attended the Muscatine annexation procedure. See *Iowa Elec. L. & P. Co. v. Town,* 221 Iowa at 446, 264 N.W. 84. See also 2 Sutherland, Statutory Construction, § 41.14.

Moreover, House File 732 sufficed to ab initio reinvest in Muscatine original and exclusive annexation jurisdiction. See *Kentucky-Tennessee Light & Power Co. v. City of Paris,* Tenn., 48 F.2d 795, 799 (6th Cir. 1931); *Los Angeles City Water Co. v. City of Los Angeles,* 88 F. 720, 742–743 (S.D.Cal. 1898), aff'd. 177 U.S. 558, 20 S.Ct. 736, 44 L.Ed. 886 (1900); *Chicago, R. I. & P. Ry. Co. v. Galyon,* 179 Okl. 570, 66 P.2d 1066, 1068–1069 (1937); 82 C.J.S. Statutes

§ 430(a), at 1003; cf. *McSurely v. McGrew*, 140 Iowa at 172–173, 118 N.W. 415, heretofore quoted.

Consequently, Muscatine cannot be said to have been irremediably divested of jurisdiction to annex the involved tract of land by any questioned procedural flaw. In fact, under existing circumstances, the aforesaid curative legislation operatively rehabilitated Muscatine's original and exclusive jurisdiction.

V. Defendants postulate, however, adoption of the foregoing rationale would violate Article III, § 30 of the Iowa Constitution which generally proscribes local or special laws. More to the point, House File 732 is challenged because of its retroactive effect and special nature. We find no merit in this approach.

First, our Constitution does not preclude enactment of retrospective laws. See *Chicago, R. I. & P. R. Co. v. Rosenbaum*, 212 Iowa at 231, 231 N.W. 646. See generally *Denton v. Moser*, 241 N.W.2d 28, 31–32 (Iowa 1976). Furthermore, curative acts are necessarily special, not general. See *McSurely v. McGrew*, 140 Iowa at 172, 118 N.W. 415. Due to the fact such legislation is often, as in the present case, designed to repair the consequence of legal accidents or mistakes because of failure by a governmental body to comply with statutory procedural requirements, curative acts are not invalid by reason of their retroactive effect. See 2 Sutherland, Statutory Construction, §§ 41.01, 41.12; 16 Am.Jur.2d, Constitutional Law, §§ 430, 432; 16A C.J.S. Constitutional Law §§ 421–422, 428.

Second, this court has held a legalizing statute, necessarily special in nature, is not prohibited by Article III, § 30 of our Constitution. See *Iowa Elec. L. & P. Co. v. Town*, 221 Iowa at 461–464, 264 N.W. 84. Additionally, where municipal boundary extensions are involved, a general curative law would ordinarily be inapplicable, and constitutional rights are not violated by passage of a special act. See *State Board of Regents v. Lindquist*, 188 N.W.2d 320, 323–324 (Iowa 1971); 2 Sutherland, Statutory Construction, §§ 41.12, 41.15.

In summary, (1) Muscatine first acted; (2) Fruitland belatedly tried to fashion a race with Muscatine; (3) Muscatine later procedurally faltered but was soon restored to its frontal position, absent any vesting of substantive rights in Fruitland; (4) Muscatine fulfilled all conditions precedent; (5) Muscatine initiated appropriate legal proceedings; and (6) Fruitland endeavored to reenter the contest.

It therefore follows, Muscatine essentially acquired and retained original, exclusive jurisdiction to annex the area embraced within its July 24, 1972, resolution by virtue of then existing legislation and the aforesaid curative Act. Consequently, Fruitland's purported voluntary annexation was subordinate and relatively ineffectual.

VI. Defendants next maintain that even if Muscatine be found to have acquired original jurisdiction to annex the disputed territory it was lost by abandonment because of failure to complete the proceeding within a reasonable time. They supportively assert more than one year was an unreasonable length of time for accomplishment of the Muscatine objective. Again we disagree.

In any annexation process reasonable dispatch and due diligence are required in order to retain jurisdiction. See *Burd v. Board of Education* (Audubon Co.), 260 Iowa 846, 856, 151 N.W.2d 457 (1967); *Town of Clive v. Colby*, 255 Iowa at 496, 121 N.W.2d 115.

But there was no unreasonable delay by Muscatine. Any procedural interruption was due to unforeseen circumstances and Muscatine promptly rectified same.

Furthermore, its petition was filed in district court less than 13 months after adoption of the July 24, 1972 original annexation-related resolution. This is a far cry from the five year delay after commencement of annexation proceedings in order to build up statutorily required physical capabilities, condemned in *Town of Clive v. Colby*, last above cited.

Defendants' abandonment-related argument provides no basis for reversal.

VII. Now considered is defendants' ancillary argument to the effect Muscatine's annexation program must fail due to the fact that in all proceedings before its city counsel the affected area was incorrectly described. This contention is predicated on a metes and bounds delineation which did not close because a final compass bearing was lacking.

At the outset, we have held, as aforesaid, a failure to literally comply with every word of our annexation statutes is not fatal. See *Mason City v. Aeling*, 209 N.W.2d 8, 11 (Iowa 1973).

Contemporaneously, as also heretofore stated, substantial compliance with prescribed procedural law is sufficient, and legislation establishing the method by which municipal corporate boundaries may be extended is to be liberally construed in favor of the public. Furthermore, a metes and bounds description is not statutorily mandated. See *City of Clinton v. Owners of Property, Etc.*, 191 N.W.2d at 674.

This court is satisfied the challenged description substantially complied with statutory requirements and no one was thereby misinformed or misled. Cf. *City of Clinton v. Owners of Property, Etc.*, 191 N.W.2d at 674–675.

Also, the petition filed by Muscatine in the court below includes, and incorporates by reference, a plat of the entire area proposed to be annexed.

The above contention is without merit.

VIII. Finally, defendants aver Muscatine should be estopped from asserting exclusive jurisdiction. In this regard, it is claimed Muscatine's second annexation resolution, identical to the first except for exclusion of the Strauseland tract, establishes a basis for estoppel.

Absent any supportive authority this asserted estoppel argument is deemed waived. See *Miller v. International Harvester Co.*, 246 N.W.2d 298, 304 (Iowa 1976). In any event, the position thus taken is devoid of substance.

In brief, every contention here voiced by defendants, whether or not discussed, has been considered and found to be without merit.

AFFIRMED.